OPINION OF THE COURT
Anthony J. Mercorella, J.
This is an omnibus posttrial motion by defendants following a verdict for plaintiffs in a medical malpractice action. All branches of the motion are denied except that part which seeks to set aside the verdict as against the weight of evidence as excessive. The jury’s finding of liability is not contrary to the weight of evidence. The interest of justice, contrary to the assertion of defendants, does not require the court’s intervention and disturbance of the jury’s finding in that regard. However defendants’ contentions as to the damage portion of the verdict do deserve closer examination.
The jury was given a verdict sheet containing questions, the responses to which constituted their findings on the various issues. The court will limit itself only to questions Nos. 5, 6 and 7 which relate to damages.
*1004 Question No. 5 (a) concerns the pain and suffering sustained by plaintiff, Mark Thornton, for which the jury awarded $1,000,000. In question No. 5 (b)(1) the jury awarded $1,000,000 for future medical expenses to said plaintiff. For impairment of earning ability covered by question No. 5 (b)(2) $500,000 was awarded. For loss of services sustained by plaintiff mother, Dorothy Thornton, the jury award was $50,000. Lastly, the jury awarded plaintiff mother $50,000 for past medical expenses.
Considerable conflicting medical evidence was received in this case. This being a medical malpractice action, the medical testimony treated both the liability as well as the damage aspect of the case.
Both counsel have thoroughly reviewed the medical evidence in their papers, and the only issues they appear to agree upon is that plaintiff was diagnosed as having stage 1-A Hodgkin’s disease; that on January 3, 1975 a staging laparotomy was performed at Montefiore Hospital by defendants, Doctors Kleinhaus and Nadler, during which a small defect (hole) was inadvertently made in the duodenum. That the defect was repaired and the surgery continued to conclusion. No recitation is made herein of the numerous divergent contentions of the parties concerning other necessary and/or unnecessary procedures and treatments since the court adequately covered these items in its charge. Although the evidence sustains a jury award of damages the court is troubled by the amounts awarded and deems the award grossly excessive.
Usually the amount of damages is in the hands of the jury and generally will not be disturbed. However, a court may not stand by idly when it is clear that a verdict is grossly excessive. “A jury’s verdict must have some relation to reality and it is the court’s duty to keep it so.” (Faulk v Aware, Inc., 19 AD2d 464, 470, affd 14 NY2d 899.)
Furthermore the setting aside of a jury verdict may not be lightly undertaken. Merely because the Trial Judge would have decided differently is not, in and of itself, sufficient. Only where a verdict seems palpably wrong on the evidence presented and the preponderance thereof leans so heavily in one direction that the jury could not have reached their conclusion upon “any fair interpreta *1005 tian of the evidence” should a jury verdict be set aside. (Kimberly-Clark Corp. v Power Auth., 35 AD2d 330; Vaughn-Rees v Connolly, 30 AD2d 785, affd 27 NY2d 901; Clark v Donovan, 34 AD2d 1099, app dsmd sub nom. Clark v Olson, 31 NY2d 661.)
This is not a rare instance of gross excessiveness. Rather it has become an all too common occurrence in this county and the trend continues and appears to proliferate at least in this court’s experience.
In the case at bar the amounts awarded may have been influenced by plaintiff’s counsel’s request in summation that the jury return an award of damages in the amount of $8,000,000, this notwithstanding a concession by counsel that $500,000 was a fair settlement amount. The court does not condemn counsel who is merely discharging his duty to his clients to protect their interests. Rather the court observes this practice of greatly overvaluating a case to the jury while quite common in all courts, has a greater effect and is more pronounced in this county than elsewhere. (Witness the inordinate number of improperly venued actions which constrain one to believe that the plaintiff’s Bar has determined that Bronx County justice by Bronx County juries is more desirable than justice rendered elsewhere.) In any event it certainly was within counsel’s privilege to place before the jury the contentions of his clients concerning damages sustained and even to suggest an amount. (Tate v Colabello, 58 NY2d 84.)
The court does have some reservations about this practice and would suggest some legislative action such as was taken in enacting CPLR 3017 (subd [c]). (Note that the Tate case apparently involved a complaint with a monetary demand where counsel has a privilege to suggest the amount demanded in the ad damnum clause of the complaint whereas the matter at hand is a medical malpractice case where only a prayer for general relief is permitted and plaintiff shall not state the amount of damages sought. [CPLR 3017, subd (c).]) Yet there appears to be no prohibition on the part of counsel to suggest an amount that the jury may award. (Tate v Colabello, supra.)
This court further observes that generally the only person who suggests any specific sums to the jury in assessing *1006 damages is the plaintiff’s attorney. On the other hand whenever the jury has asked the court for direction in fixing a monetary amount, this court’s response has been that the jury was to award plaintiff whatever was fair and just compensation for his injuries. (PJI 2:280, 2:281.) Yet this instruction provides little insight to jurors in assisting them at arriving at a fair amount. Rather what they heard in this case was a suggestion by plaintiff’s lawyer of $8,000,000 and no one else mentioned any precise sum of money. Whether jurors have their own sense of equity or justice or whether they want to redistribute the wealth in accordance with their own socio-economic philosophy is something this court has been unable to discern. What is clear however, is that here they could not have been heeding the evidence or the court’s instructions. The testimony was that future medical expenses would involve one more surgical procedure requiring a 10-day stay at $300 per day totaling $3,000 and in addition a surgical fee of $2,500. Moreover plaintiff would be required to see an internist at least once a month for life at an average fee of $50 per visit. Accepting the need for these future medical expenses without reservation, the court nevertheless views the amount of the award $1,000,000 as highly excessive and against the weight of the credible evidence. In this regard, the court would substitute the amount of $34,480 arrived at in the following manner: Visits to internist, $600 per year for a projected life expectancy of 48.3 years for a 19-year-old male would total $28,980 added to the $5,500 for hospital and surgical services.
Upon further examination the jury award for lost earnings in the amount of $500,000 represents not only the jury’s estimate of total disability but also faulting of defendants for plaintiff’s limited career opportunities.
From the evidence presented, the court does not view plaintiff, Mark Thornton, as incapable of becoming gainfully employed in some capacity or that his lack of skills was solely a result of defendants’ actions. Rather the career opportunities of Mr. Thornton are limited partly because of the effects of defendants’ actions and partly due to his penchant for absenteeism which was demonstrated by his school record. Although plaintiffs contended that these *1007 absences were solely a result of defendants’ actions this was not sufficiently corroborated by medical evidence. Just as the court views plaintiff as being capable of gainful employment so too does the court view him as capable of obtaining at least a minimal education to acquire some skills. Therefore the court is compelled to minimize the testimony of the economist concerning projected earnings of college graduates. Accordingly the jury award for lost earnings is reduced to $350,000.
Lastly, the award for the pain and suffering of plaintiff presents a more troublesome matter since the court may not substitute its own evaluation in place of the jury’s assessment unless the verdict does not “have some relation to reality”. (Faulk v Aware, Inc., supra.) Here the jury award is not only against the weight of the credible evidence but defies reality. Although the court is reluctant to disturb a jury award for pain and suffering it is duty bound to eliminate grossly excessive awards such as the one herein. Again the court perceives other factors including sympathy that must have prompted the jury on this item dehors the evidence. Accordingly the award on that item is reduced to $500,000.
With respect to the amounts awarded to the plaintiff mother for past medical expenses, that item is reduced to the sum stipulated by counsel in the amount of $30,550; and the award for loss of services is reduced to $10,000 by virtue of the evidence which while not controverted, was rather scant.
While the court is mindful of the parameters of awards and reluctant to disturb the jury’s assessment of the severity and extent of pain and suffering it nevertheless views the jury’s findings as to damages sustained by plaintiff to be greatly excessive and contrary to the weight of evidence motivated by sympathy or other reasons requiring judicial intervention.
The suggestion that this court leave the determination and exhibit of excessiveness, if any, to the appellate process is wholly without merit. This court will not abdicate its responsibility to act when obliged to both on the law and on the facts. Certainly no appellate court can more readily scrutinize the evidence, the demeanor of the witnesses and *1008 the nuances of the trial than the Trial Judge who has a keener perception and sense of what occurred.
Accordingly, a new trial is ordered on the issue of damages only, unless plaintiffs within 20 days after service upon them of a copy of the order herein, with notice of entry, serve and file in the office of the clerk of this court a written stipulation consenting to the reduction of the verdict in favor of the plaintiff, Mark Thornton, in the amount of $884,480 which represents the award to the following questions of the jury verdict sheet.
No. 5 (a) (Pain and suffering) in the sum of $500,000
No. 5 (b)l (Future medicals) in the sum of 34,480
No. 5 (b)2 (Impairment of earning ability) in the sum of 350,000
And in favor of plaintiff mother, Dorothy Thornton, in the amount of $40,550 which represents the award to the following questions of the jury verdict sheet.
No. 6 (Loss of services) in the sum of $ 10,000
No. 7 (Past medicals) in the sum of 30,550 as stipulated by the parties.
If plaintiffs so stipulate, the judgment, as so reduced against defendants may be entered. If plaintiffs do not so stipulate, the verdict in the matter of damages only, as to questions Nos. 5, 6 and 7 is set aside as contrary to the weight of the evidence and a new trial ordered on the issue of damages only with respect to these questions of the verdict sheet.