■ CLAUDE BECHARD et al., Respondents, v MARGUERITE M. EISINGER, as Executrix of PETER J. EISINGER, Deceased, Appellant. — Appeal (1) from a judgment of the Supreme Court in favor of plaintiff Claude Bechard, entered December 20, 1983 in Clinton County, a verdict rendered at Trial Term (Harvey, J.), and (2) from an order of said court, entered December 23, 1983 in Clinton County, which denied defendant's motion to set aside the verdict.

Plaintiff Claude Bechard was employed as a truck driver for Anchor Motor Freight, Inc., at all relevant times herein. On November 11, 1979, he was accidentally tripped while officiating at a youth hockey game, thereby injuring his left hand and wrist. The next day he went to the office of defendant Dr. Peter J. Eisinger,[*] who took six X rays. He then diagnosed plaintiff's injury as a crack in the distal end of the radius, and put plaintiff's left arm in a cast. On December 10, 1979, plaintiff returned to his next appointment with defendant. Two more X rays were taken and defendant informed plaintiff that the crack was healing. On December 27, 1979, plaintiff kept his last appointment with defendant. At that time, more X rays were taken and the cast was removed. Following his examination of plaintiff, defendant made a new diagnosis, determining that plaintiff had suffered a rotary subluxation of the scaphoid (a dislocation of the scaphoid bone of the wrist, causing an abnormal gap between it and the adjacent lunate bone). Defendant informed plaintiff that an operation would be necessary, and made an appointment for him on January 2, 1980 with a hand surgeon, Dr. Philip Davis.

Dr. Davis confirmed this diagnosis and operated on plaintiff on January 18, 1980. Plaintiff was discharged from the hospital two days later. He returned to work on April 23, 1980, where he

---

[*] Dr. Eisinger was killed in an automobile accident on February 27, 1980. Accordingly, the instant action was brought against the executrix of his estate.

is still employed, and was released from medical care by Dr. Davis on July 28, 1980.

In October, 1980, plaintiff sued defendant's estate for malpractice, alleging that the delay in treatment caused by defendant's failure to accurately diagnose his condition until December 27, 1979 greatly exacerbated the treatment and permanent condition of plaintiff's wrist and hand. Following trial, the jury awarded judgment in favor of plaintiff in the amount of $161,000, itemized as: (1) $50,000 for the injury, including pain, suffering and permanent effect; (2) $1,000 for medical expenses; (3) $10,000 for loss of earnings; and (4) $100,000 for impairment of earning ability.

Defendant's first argument on this appeal is that the evidence adduced at trial was insufficient to support the finding that defendant's treatment was the proximate cause of plaintiff's injuries. Defendant concludes that the trial court erred in not directing a verdict in defendant's favor. We cannot agree. There is sufficient evidence in the record to support the jury's finding that defendant was negligent and that this negligence directly caused an exacerbation of plaintiff's condition.

Plaintiff's expert medical witness testified that an accurate diagnosis of plaintiff's condition could have been made from the X rays taken on December 10, 1979, and that defendant deviated from standard orthopedic practice by failing to make a correct diagnosis until December 27, 1979. (The medical malpractice panel agreed, albeit solely on this point.) Further, plaintiff's expert witness testified that had additional X rays been taken 10 to 14 days after the injury on November 11, 1979, plaintiff's condition could have been properly diagnosed even before December 10, 1979. The expert further testified that the resultant delay in operating on plaintiff required more difficult and extensive surgery to be performed and left plaintiff in worse condition (i.e., with greater muscular atrophy and increased pain from arthritis) than if the operation had been performed sooner (optimally, three weeks after the injury), and that any delay beyond three weeks caused an increasingly severe aggravation of his condition. Further, defendant's own expert testified that the actual state of plaintiff's injury was visible on the December 10 X rays, and that plaintiff's ensuing disability was permanent (although, he opined, it was not caused by defendant).

Given the sum of this testimony, the jury could rationally conclude that defendant was negligent and that this negligence was a substantial factor in aggravating plaintiff's injury (see *Derdiarian v Felix Contr. Corp.*, 51 NY2d 308, 315). Accordingly,

we will not interfere with this finding (see *Monahan v Weichert,* 82 AD2d 102, 108).

We are also unpersuaded by defendant's claim that plaintiff's wife was barred by the Dead Man's Statute (CPLR 4519) from testifying as to certain conversations with defendant and that the trial court erred in admitting this testimony. CPLR 4519 precludes any person "interested in the event" from testifying as to a "personal transaction or communication" with the deceased unless the representative of the deceased's estate has waived this protection. In the instant matter, Mrs. Bechard dropped her derivative suit against defendant and so was properly determined by the trial court not to be a person interested in the event (see *Matter of Lefft,* 44 NY2d 915, 917; *Friedrich v Martin,* 294 NY 588). Her status as plaintiff's spouse does not change this conclusion (see 5 Weinstein-Korn-Miller, NY Civ Prac, par 4519.12).

Defendant's next contention is that plaintiff's attorney committed reversible error by stating in his summation to the jury: "Do justice to this man. What is justice? * * * [S]imple justice requires for what he has been through and what he is going to have to go through because this is a permanent condition, $100,000? $200,000? $300,000?". Timely objection was made to this statement by defense counsel and an exception was taken to the denial of his motion for a mistrial.

We consider this statement to the jury to have been highly improper in that it resulted in counsel becoming an unsworn witness and rendering opinion testimony which would not have been admissible into evidence (see *Kusisto v McLean,* 52 AD2d 674, 675; cf. *Tate v Colabello,* 58 NY2d 84, 87). CPLR 3017 (subd [c]) prohibits the pleadings in a malpractice action from containing a demand for a dollar amount of damages. The purpose of this stricture is, in part, to curb the effect of exaggerated demands for damages which could be read to the jury and thereby bias them towards making excessive awards (McKinney's Session Laws of NY, 1976, Governor's Special Message, p 2428; Siegel, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3017, 1983-1984 Pocket Part, pp 26-27). An attorney's reference in his jury summation in a malpractice trial to a specific dollar amount as an appropriate award is just as likely to produce the jury reaction which CPLR 3017 (subd [c]) was drafted to prevent. Accordingly, such statements might well be held to constitute reversible error. However, we hold that in this case, counsel's statements were partially vitiated by two factors: (1) counsel's implication in his remarks that the jury's decision was theirs to make; and (2) the

trial court's curative instruction to the jury, warning that statements of counsel were not evidence and that the determination of damages was a question solely for them to decide (see *Kusisto v McLean, supra*). Hence, we conclude that this remark did not, under these circumstances, constitute reversible error.

Finally, we are unpersuaded by defendant's contention that the jury's award of damages was excessive. Plaintiff's expert testified that defendant's negligence created or enhanced an otherwise avoidable permanency of plaintiff's original injury, including the fusion of bones in his wrist and traumatic arthritis. He also found evidence of progressive deterioration between his first and second examinations. Plaintiff testified to continued pain, restricted motion and weakness in the affected wrist, and that this interfered with the performance of his usual work and other activities. Defendant's medical expert conceded that plaintiff had suffered permanent restricted wrist motion and raised the possibility of a future total wrist fusion if plaintiff's pain continued. Under these circumstances, the $50,000 damages for the injury, pain and suffering was not outside the range of reasonableness (*Zimmerman v New York City Health & Hosps. Corp.*, 91 AD2d 290, 294-295), nor was the award of $100,000 for future loss of earnings. Plaintiff is a truck driver employed in the hauling and delivery of new automobiles. He is required to participate in loading and unloading, tasks which require the use of considerable physical strength in both hands. He currently earns about $700 a week. In light of the evidence previously described concerning the nature of his impairment and degree of discomfort, the jury could have reasonably inferred some significant curtailment of plaintiff's working life expectancy. Given the substantial rate of his remuneration, the evidence was thus sufficient to support that portion of the verdict.

Judgment and order affirmed, with costs. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.