WILLI BRAUN et al., Respondents-Appellants, v NASEER AHMED, Appellant-Respondent.

Second Department, April 27, 1987

### APPEARANCES OF COUNSEL

*O'Connor, McGuinness, Conte, Doyle, Oleson & Collins (Charles E. Luceno* of counsel), for appellant-respondent.

*Sankel & Trief (Barbara E. Olk* and *Ted Trief* of counsel), for respondents-appellants.

### OPINION OF THE COURT

BRACKEN, J.

The primary issue on this appeal is one of first impression in this Department, namely, whether, in a medical malpractice action, the plaintiffs' counsel in summation may request a specific dollar figure for damages. Because we believe that counsel may as a matter of fair comment make such a request and since that request was denied by the trial court in this instance, we reverse and direct a new trial on the issue of damages only.

The plaintiff Willi Braun came under the care of the defendant Dr. Naseer Ahmed in 1976, primarily for the treatment of diabetes. During a visit in May 1978, Braun complained of

an irritation on the foreskin of his penis. Dr. Ahmed diagnosed an inflamed foreskin and prescribed an ointment. Braun's condition did not improve and in December, seven months later, the defendant recommended a circumcision.

While Braun arranged with a surgeon to undergo such surgery in January 1979, he thereafter canceled the procedure and continued under the defendant's care. He was eventually circumcised in January 1980 after his condition worsened. A biopsy revealed cancerous cells, necessitating a partial penectomy in February 1980.

Braun and his wife subsequently brought this action against Dr. Ahmed on the ground that he had failed to warn Braun of the possibility of penile cancer, and had further led Braun to believe that his condition did not require immediate surgery. After trial, the jury returned a verdict against Dr. Ahmed apportioning his fault at 65% and that of the plaintiff Willi Braun at 35%, and awarding damages totaling $147,000.

The parties raise three issues on their respective appeal and cross appeal which warrant discussion. The defendant contends that the plaintiffs did not establish a prima facie case in that they failed to call a medical expert and relied instead upon the defendant's testimony to establish liability. The plaintiffs contend that the trial court erred both in refusing to permit the plaintiffs' counsel to request a specific dollar amount during summation, and in refusing to set aside the jury award as inadequate.

■ With respect to the issue of the defendant's liability, the trial court did not err in denying the defendant's motion to dismiss the complaint. While "it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice" *(Keane v Sloan-Kettering Inst. for Cancer Research,* 96 AD2d 505, 506; *see also, Paul v Boschenstein,* 105 AD2d 248, 249), it is also well settled "that a plaintiff in a medical malpractice action may call as a witness the doctor against whom she brought the action and question him as a medical expert" *(Segreti v Putnam Community Hosp.,* 88 AD2d 590, 592). In this case, the defendant himself served as the plaintiffs' expert. Dr. Ahmed testified as to the requisite standard of care, namely, that in May 1978 it would have been a departure to fail to advise Braun about the danger of cancer, that Braun had no penile cancer in May 1978, that he had warned Braun about the possibility of cancer, and that the subsequent partial penec-

tomy would not have been necessary if Braun had undergone the circumcision in May 1978. On the other hand, Braun testified that the defendant had never warned him about the possibility of cancer. Thus, the jury was squarely presented with a question of fact as to whether the defendant warned Braun of the possibility that the inflammatory condition of his foreskin could become cancerous. The remaining contentions as to liability are without merit, and we therefore affirm the jury's findings of fact as to liability, including the jury's findings with respect to the apportionment of fault.

We now address the principal issue raised on this appeal —whether counsel in summation in a medical malpractice action may request a specific sum from the jury for damages.

This issue may be resolved by reviewing both the role of the jury and of counsel in summation and relating their functions to the 1976 medical malpractice legislation and to the determination in *Tate v Colabello* (58 NY2d 84).

The jury is sworn to render a verdict based upon the evidence, and if liability is established, the jurors must ascertain and award damages. The evidence determines the amount *(Williams v Brooklyn El. R. R. Co.,* 126 NY 96, 100, 102). In other words, the jury must "translate the value of the [plaintiff's] injuries and of * * * consequent pain and suffering into dollars and cents" *(Tate v Colabello, supra,* at 87). It is evident that this translation of pain and suffering into dollars and cents is " 'difficult of * * * estimation' ", since pain has "no market price[,] [i]t [cannot be] bought, sold, or bartered," and "no standard of value may be applied" *(Franco v Fujimoto,* 47 Haw 408, 419, 424, 390 P2d 740, 748, 750). Yet, the jury is guided by the court in this difficult endeavor with only an instruction that it is to award reasonable compensation *(Paley v Brust,* 21 AD2d 758).

Regarding the role of counsel, as a general principle there exists a right of fair comment on the evidence, described as follows: "It is the privilege of counsel in addressing a jury to comment upon every pertinent matter of fact bearing upon the questions which the jury have to decide. This privilege it is most important to preserve and it ought not to be narrowed by any close construction, but should be interpreted in the largest sense * * * The jury system would fail much more frequently than it now does if freedom of advocacy should be unduly hampered and counsel should be prevented from exercising within the four corners of the evidence the widest

latitude by way of comment, denunciation or appeal in advocating his cause" *(Williams v Brooklyn El. R. R. Co., supra,* at 102-103). Although broad in scope, counsel's liberty of discussion must remain within the issues and the evidence *(Taype v City of New York,* 82 AD2d 648, 651; *Horton v Terry,* 126 App Div 479, 480).

Distinct from the right of fair comment is counsel's right to place the contentions of the parties, as stated in the pleadings, before the jury. The "[s]tatements, admissions and allegations in pleadings are always in evidence for all the purposes of the trial of the action. They are made for the purpose of the trial, and are before the court and jury, and may be used for any legitimate purpose" *(Holmes v Jones,* 121 NY 461, 466; *Tisdale v President of Del. & Hudson Canal Co.,* 116 NY 416; *Field v Surpless,* 83 App Div 268, 271; *Owen A. Mandeville, Inc. v Zah,* 38 AD2d 730, *appeal dismissed* 30 NY2d 833, *affd* 35 NY2d 769 [held error to prevent counsel from reading a paragraph of the defendant's bill of particulars to compare it with the evidence]). Counsel's right to use the pleadings before the jury is limited by the adversary's right to have the jury instructed that the complaint is not evidence and that the jurors should reach their determination only from the evidence *(Rice v Ninacs,* 34 AD2d 388, 392).

Narrowing our focus to counsel's right to argue a specific monetary amount, New York has long permitted mention of the figure stated in the ad damnum clause *(Tisdale v President of Del. & Hudson Canal Co., supra).* However, a recent determination permits mention of a lesser lump-sum figure, apparently based upon the evidence, as it clearly does not come from the pleadings *(see, Tate v Colabello, supra).* Of course, counsel still may not ask for damages in an amount exceeding the sum demanded in the ad damnum clause *(Tate v Colabello, supra).*

A review of decisions in our sister States reveals that a majority of jurisdictions permit presentation of some figure representing damages for pain and suffering, whether as fair comment on the evidence, as presentation of the pleadings, or as argument of a unit-of-time or per diem formula[1] *(see,* Annotation, 14 ALR3d 541; Annotation, 60 ALR2d 1347; *Caley v Manicke,* 24 Ill 2d 390, 182 NE2d 206 [in argument, proper

---

1. Under a unit-of-time or "per diem" formula "small units of time of pain and suffering are given a specific monetary value and multiplied at this rate for the entire time for which it might be endured" *(Tate v Colabello,* 58 NY2d 84, 88; *see also, Paley v Brust,* 21 AD2d 758).

for counsel to tell the jury what he considered a fair compensation under the evidence]; *Affett v Milwaukee & Suburban Transp. Corp.,* 11 Wis 2d 604, 106 NW2d 274, 280 [proper for the defendant's counsel to state and argue the amount of future pain and suffering which he believed the evidence would fairly and reasonably sustain]; *Missouri, Kan. & Tex. Ry. Co. v Hibbitts,* 49 Tex Civ App 419, 109 SW 228 [defendant's attorney had a right to draw a conclusion from the evidence and discuss before the jury what he thought would be a proper amount of damages]; *Shockman v Union Transfer Co.,* 220 Minn 334, 19 NW2d 812 [argument as to amount of client's damages based upon the evidence not error]; *Maurizi v Western Coal & Min. Co.,* 321 Mo 378, 11 SW2d 268 [statement by plaintiff's counsel in opening that suit was brought for $50,000 in damages was proper]; *Phillips v Fulghum,* 203 Va 543, 125 SE2d 835 [permissible for defendant's counsel to bring to the jury's attention, both in opening and summation, the amount sued for]; *Meissner v Smith,* 94 Idaho 563, 494 P2d 567, 573 [presentation of ad damnum proper]; *Duguay v Gelinas,* 104 NH 182, 182 A2d 451, 454 [allowing counsel to argue to the jury the lump sum he elects to recover or the ad damnum of the writ]; *Beagle v Vasold,* 65 Cal 2d 166, 417 P2d 673, 681 [prohibition of per diem argument deprives counsel of the full fruit of advocacy on the issue of damages]). The issue of a per diem or unit-of-time argument has sparked the most controversy, however, and subsequent to *Beagle v Vasold (supra),* where, after extensive analysis and discussion of the conflicting views, California joined the growing majority of jurisdictions approving such an argument, six additional States have joined the majority *(see, Higgins v Hermes,* 89 NM 379, 552 P2d 1227, 1230, *cert denied* 90 NM 8, 558 P2d 620; *Hardwick v Price,* 114 Ga App 817, 152 SE2d 905, 908; *Weeks v Holsclaw,* 306 NC 655, 295 SE2d 596, 597, *reh denied* 307 NC 273, 302 SE2d 884; *Graeff v Baptist Temple,* 576 SW2d 291, 302 [Mo] [hybrid]; *Worsley v Corcelli,* 119 RI 260, 377 A2d 215, 218; *Barretto v Akau,* 51 Haw 383, 463 P2d 917, 923 [overruling earlier decision in *Franco v Fujimoto,* 47 Haw 408, 390 P2d 740, *supra,* which prohibited per diem argument]). In this State, the Court of Appeals has declined to pass upon the permissibility of a unit-of-time argument *(see, Tate v Colabello,* 58 NY2d 84, 88, *supra),* although this Department, prior to *Tate,* rejected such arguments as improper *De Cicco v Methodist Hosp.,* 74 AD2d 593; *Chlystun v Frenmer Transp. Corp.,* 74 AD2d 862).

A minority of jurisdictions still prohibit mention of any sum to the jury *(see, e.g., Botta v Brunner,* 26 NJ 82, 138 A2d 713).

Although the following excerpts refer to a discussion of a unit-of-time or per diem formula to the jury, they nevertheless reflect the conflicting positions on the larger issue of comment as to any figure:

"For hundreds of years, the measure of damages for pain and suffering following in the wake of a personal injury has been 'fair and reasonable compensation.' This general standard was adopted because of universal acknowledgement that a more specific or definitive one is impossible. There is and there can be no fixed basis, table, standard or mathematical rule which will serve as an accurate index and guide to the establishment of damage awards for personal injuries. And it is equally plain that there is no measure by which the amount of pain and suffering endured by a particular human can be calculated. No market place exists at which such malaise is bought and sold. A person can sell quantities of his blood, but there is no mart where the price of a voluntary subjection of oneself to pain and suffering is or can be fixed. It has never been suggested that a standard of value can be found and applied. The varieties and degrees of pain are almost infinite. Individuals differ greatly in susceptibility to pain and in capacity to withstand it. And the impossibility of recognizing or of isolating fixed levels or plateaus of suffering must be conceded * * *

"As has been indicated, pain and suffering have no known dimensions, mathematical or financial. There is no exact correspondence between money and physical or mental injury or suffering, and the various factors involved are *not capable of proof in dollars and cents.* For this reason, the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation" *(Botta v Brunner, supra,* at 92-95, at 718, 720; emphasis supplied; Annotation, 60 ALR2d 1347).

The inherent weakness in this analysis is that it posits the jurors' duty as having to do the impossible, i.e., from evidence which is "not capable of proof in dollars and cents" they must fix dollars and cents damages, and, under the New Jersey rule, must do so without guidance.

On the other hand, the following arguments are offered in support of guidance: " 'Authorities approving such arguments give numerous reasons: (1) that it is necessary that the jury be

guided by some reasonable and practical considerations; (2) that a trier of the facts should not be required to determine the matter in the abstract, and relegated to a blind guess; (3) that the very absence of a yardstick makes the contention that counsel's suggestions of amounts mislead the jury a questionable one; (4) the argument that the evidence fails to provide a foundation for per diem suggestion is unconvincing, because the jury must, by that or some other reasoning process, estimate and allow an amount appropriately tailored to the particular evidence in that case as to the pain and suffering or other such element of damages; (5) that a suggestion by counsel that the evidence as to pain and suffering justifies allowance of a certain amount, in total or by per diem figures, does no more than present one method of reasoning which the trier of the facts may employ to aid him in making a reasonable and sane estimate; (6) that such per diem arguments are not evidence, and are used only as illustration and suggestion; (7) that the claimed danger of such suggestion being mistaken for evidence is an exaggeration, and such danger, if present, can be dispelled by the court's charges; and (8) that when counsel for one side has made such argument the opposing counsel is equally free to suggest his own amounts as inferred by him from the evidence relating to the condition for which the damages are sought' " (*Franco v Fujimoto, supra,* at 416-417, at 746-747).

The foregoing represents the background against which we must make our determination as to whether counsel in a medical malpractice action in this State may mention a figure to the jury. To recapitulate, the possible bases for counsel's argument to the jury on damages are the amount prayed for in the pleadings, a lump sum or fair comment on the evidence, and a per diem or other unit-of-time formula. We are not called upon to decide which of these bases are available in New York in the ordinary negligence action, for presentation to the jury of the ad damnum and a lesser lump-sum figure has been approved, and use of time formulas remains undecided by our highest court *(see, Tate v Colabello,* 58 NY2d 84, 88, *supra; but see, Paley v Brust,* 21 AD2d 758, *supra).* Scrutiny of *Tate's* holding reveals a departure from the 98-year-old rule of *Tisdale v President of Del. & Hudson Canal Co.* (116 NY 416, *supra)* which permitted only the ad damnum figure to be given to the jury as part of the pleadings. The figure commented upon in *Tate* was not that stated in the pleadings, and thus, must have constituted fair comment on the evi-

dence, unless the courts adhere to the fiction that such a figure is still part of the pleadings. It is this permitted departure from the pleadings which raises the question of whether a fair-comment or lump-sum standard may be used in a medical malpractice action, where, by statute, the pleadings contain no ad damnum clause for general damages (see, CPLR 3017 [c]).

Having examined the history of the 1976 medical malpractice legislation and finding no reason to conclude that the Legislature intended to curb comment to the jury, we conclude that counsel in a medical malpractice action may argue a lump-sum figure based upon the evidence. Counsel is, however, circumscribed by the pleadings and may not argue a figure which cannot be considered reasonable.

Turning to the legislation, CPLR 3017 (c) prohibits a specific dollar demand in the ad damnum clause where the action is against a physician, and, as of 1980, where it is against a municipality. It is this prohibition upon which our colleagues rely to justify a further prohibition against fair comment to the jury on the evidence.

It is clear that the 98-year-old right *to read* the pleadings to the jury (see, *Tisdale v President of Del. & Hudson Canal Co., supra*), is affected by CPLR 3017 (c), because if the pleadings are read they will contain no dollar demand. This ancillary consequence of eliminating the specific demand was explained as follows: "[I]f the court's usual practice is to allow the plaintiff on summation to tell the jury how much the complaint demands * * * there will be nothing to tell, hereafter, in a medical malpractice action, which will leave the jury to calculate the plaintiff's damages without the plaintiff's complaint demand as a guide" (Siegel, 1976 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3017:11, at 47 [1987 Pocket Part]). It is emphasized that *as of 1976*, prior to *Tate*, there was no clear right to present a plaintiff's specific dollar demand to the jury other than through the pleadings.

Without knowledge of the legislative history, one would presume that the purpose of removing the dollar figure from the ad damnum (CPLR 3017 [c]) was to keep such a monetary demand from the jury in furtherance of the general policy of the 1976 medical malpractice legislation, i.e., to reduce medical malpractice insurance premiums. It was not. The legislative bill jacket for CPLR 3017 (c) is silent regarding the

purpose of eliminating the specific sum in the medical malpractice ad damnum (a minor part of the legislative package to deal with the medical malpractice insurance crisis). However, the Report of the Special Advisory Panel on Medical Malpractice chaired by William J. McGill (hereinafter the McGill Report), could not have been more specific or clear as to the purpose of the amendment. CPLR 3017 (c) was to have the salutary effect of appeasing doctors. In contrast to the balance of the legislative package, it was not intended to affect the rates of premiums for malpractice insurance.

As part of the short-term package of recommendations to meet the immediate insurance crisis, the panel recommended a $100,000 ceiling on pain and suffering awards, itemized verdicts, abolition of the collateral source rule,[2] regulated contingent fees, and structured awards for future damages. Each of the foregoing recommendations indicated that the suggested change would reduce insurance premiums (McGill Report, at 39, 41, 43, 44).

In stark contrast, the recommendation concerning the ad damnum clause unequivocally stated, *"the elimination of the ad damnum clause will not reduce insurance premiums"* (McGill Report, at 45). The full text indicates that the purpose was *solely* to avoid adverse publicity, to wit:

"5. *Ad Damnum Clauses*

"The *ad damnum* clause is the final paragraph in plaintiff's complaint and has been considered an essential part of his pleading. *In fact, the clause serves very little legal purpose other than to set the upper limit of recovery.* Because the plaintiff is free to assert any amount of damages he chooses, *ad damnum* clauses in medical malpractice actions have frequently alleged damages in very high amounts. Because such figures are often picked up by the news media and form the basis for adverse publicity, *ad damnum* clauses have become a special irritant to the medical profession. The fact that a case in which a high figure was asserted in the *ad damnum* clause is subsequently settled for a relatively low amount or ends with a judgment for the defendant is not commonly given equal media coverage.

---

2. "The collateral source rule is a rule in common law that provides that in setting an award the court or jury may not take into account the fact that part of the plaintiff's damages are already covered from other sources, such as his own health insurance, disability compensation, and the like" (McGill, Report of the Special Advisory Panel on Medical Malpractice, at 38-39).

*"Though the elimination of the ad damnum clause will not reduce insurance premiums, the Panel recommends the abolition of ad damnum clauses in medical malpractice actions by amendment of Section 3017 of the Civil Practice Law and Rules to require that the complaint include a demand for 'reasonable damages' without specifying the amount"* (McGill Report, at 45).

The staff papers reinforce this conclusion, as they state: "Elimination of the *ad damnum* clause will not reduce insurance premiums, and none of the health care providers have argued that it would. Its elimination, which has also been recommended by the City Bar Association Report, however, will do away with an unnecessary irritant" (McGill Report, at 201).

The legislative bill jacket for the 1980 amendment to CPLR 3017 (c)—which added municipalities as defendants against which ad damnum dollar specifics are prohibited—again emphasizes "sensationalism" and publicity abuses to which ad damnum clauses are subject. Supporters of the bill stated that the amendment would not have any negative effect on litigants.

From the legislative bill jacket for CPLR 3017 (c) and the McGill Report, therefore, it appears that the only purpose of the ad damnum legislation was to reduce publicity concerning exaggerated demands. The negative effects of such publicity were first, irritation and embarrassment to physicians, and second, a spiral of inflated demands resulting from publicized demands (i.e., published figures setting a going rate below which subsequent complaints do not drop).

A by-product of the amendment not considered by the McGill Report was that there was no longer a specific dollar demand to be placed before a jury in summation. Thus, the Appellate Division, Third Department, was not on solid ground when it stated in *Bechard v Eisinger* (105 AD2d 939) that CPLR 3017 (c) was drafted to prevent, in part, the effects of exaggerated demands for damages which could be read to the jury and thereby bias them towards making excessive awards. We find no authority for this view, as the amendment to CPLR 3017 was not drafted to prevent jury reaction to the ad damnum, except insofar as potential jurors could be "preconditioned" by sensational news accounts of inflated demands

making them aware of the "going rates"[3] *(see,* 1976 McKinney's Session Laws of NY, Governor's Special Message, at 2428). Moreover, *Bechard's* alternate rationale is in direct conflict with *Tate,* since the court in *Bechard* considered that fair comment "resulted in counsel becoming an unsworn witness and rendering opinion testimony which would not have been admissible into evidence" *(Bechard v Eisinger, supra,* at 941).

Our dissenting colleagues argue that the plaintiff in an ordinary negligence case is bound by the "upper limit" demand in the complaint and that a medical malpractice plaintiff is not so bound. Our answer to this argument is that a plaintiff in a medical malpractice action is more likely to be bound by a demand for reasonable damages than is a plaintiff in a negligence action who may demand any figure at all, reasonable or otherwise. It is this reality which most readily explains the departure by the Court of Appeals from the former rule limiting a plaintiff to that figure demanded in the complaint. Once the departure from the figure demanded in the complaint is made, and counsel is permitted to argue a figure based on the evidence, there exists no reason to prohibit medical malpractice plaintiffs from suggesting a sum to the jury. To prohibit comment may result in inadequate awards to those who have severe injuries—a result never intended by the McGill Panel or the Legislature. Medical malpractice plaintiffs should not be treated differently at the advocacy stage of summation. They should be able to suggest a reasonable figure to the jury although they are no longer permitted to place a figure in the complaint.

Aside from *Bechard v Eisinger (supra),* the only other case to address the issue since *Tate* (58 NY2d 84, *supra)* is *Thornton v Montefiore Hosp.* (120 Misc 2d 1003, *mod* 99 AD2d 1024), wherein the trial court recognized the right of counsel in a medical malpractice action to suggest in summation an amount that the jury might award *(Thornton v Montefiore Hosp., supra,* at 1005). In *Thornton,* the trial court reduced the jury's verdict on damages, and the Appellate Division, First

---

3. It is noted that the Association of the Bar of the City of New York did refer to jury reaction when recommending elimination of ad damnum specifics. However, it did so only because of its belief that *"reading* of the ad damnum to the jury by plaintiff's counsel in summation may appear to add some official sanction to the sum sued for" (emphasis supplied). Such danger is not present when counsel "suggests" a sum to the jury rather than reading the complaint.

Department, further reduced the damage award and otherwise affirmed. However, the affirmance cannot be viewed as constituting approval of the trial court's ruling on the summation issue, because the issue was not preserved and was not addressed in the briefs on appeal. Nevertheless, we agree with *Thornton*'s ruling, except insofar as the trial court considered itself powerless to prohibit the plaintiff's counsel from suggesting a sum of $8,000,000 to the jury. In a medical malpractice action, the plaintiff is limited to a demand for reasonable damages by his or her complaint, and in summation must suggest a figure that may be characterized as reasonable, or not unreasonable, as a matter of law. The final court-reduced award in *Thornton* was $484,480 *(Thornton v Montefiore Hosp.,* 99 AD2d 1024, *supra).* As a matter of law, it can be said that $8,000,000 was not reasonable and not within the complaint's demand.

Our dissenting colleagues argue that by permitting counsel in summation, and, inevitably, at earlier stages of the trial as well, to suggest a sum of money that the jury ought to award, we are thereby requiring the Trial Judge to conduct an unprecedented and unduly burdensome pretrial procedure whereby he must evaluate the damage claims in the case and determine what constitutes a reasonable figure for purposes of fair comment at appropriate stages of the ensuing trial. This argument is, however, unfounded, because the sole issue presented on appeal in this case is whether the Trial Judge should have permitted the plaintiff's counsel to suggest a dollar figure in the course of his summation. When the trial reaches the point where summations are about to be delivered, all of the evidence in the case has been presented, and the trial court is therefore in a position to adequately determine a reasonable figure upon which counsel may comment during their respective summations, and to determine the appropriate manner in which the remaining aspects of the case are to be submitted to the jury. Thus, we hold only that counsel in a medical malpractice action may suggest a reasonable figure for damages in summation, and we express no view as to whether counsel may offer such suggestions during voir dire, opening statements and at other stages of the trial.

In sum, the Legislature in the 1976 legislation never intended to relegate medical malpractice victims to lesser awards by eliminating ad damnum clauses from their complaints, and *Tate* authorized counsel to suggest the amount of a damage award to the jury, thus permitting reasonable

figures to be presented to the jury to guide them when they inevitably ask, "How much is reasonable?"

Before reaching the plaintiffs' claim that the jury award was inadequate, we find it necessary to comment upon several further points made by our colleagues.

First, we perceive no basis for the apparent distinction drawn by our colleagues between economic damages, e.g., medical expenses and loss of earnings, and damages for non-economic loss, e.g., pain and suffering. They concede that counsel have an absolute right to comment to the jury about the sums proven for economic damages, just as they may comment upon the other evidence in the case, but they would absolutely prohibit counsel from commenting about the value of damages for pain and suffering. However, because the dissenters adopt the view that the right to suggest a specific sum of money is derived solely from the ad damnum clause of the complaint, and because CPLR 3017 (c) proscribes the inclusion of any statement as to the amount of damages sought in the complaint without drawing a distinction between economic and noneconomic damages, the willingness of the dissenters to permit comment on the sums sought for economic loss serves to undermine their position regarding comment on pain and suffering.

We next refer to the Governor's Special Message to the Legislature, from which our colleagues wrote: "It is also contended that, especially in medical malpractice cases, exaggerated demands are used to precondition the jury and result in excessively high awards" (1976 McKinney's Session Laws of NY, Governor's Special Message, at 2428). Focusing on use of the words "the jury", our colleagues imply that a specific jury in a specific case is the subject and target of "pre-condition-[ing]" by comments as to dollar amounts. We cannot subscribe to this view as it departs from the analysis in the McGill Report and cannot explain use of the word "pre-condition". Preconditioning does not come from a single exposure during trial, and can only result from repeated exposure. Use of the word "pre-condition" suggests that it happens long before jurors are sworn as a result of newspaper accounts of excessive demands in other medical malpractice cases which may set the going rates for particular injuries in the minds of those who later serve on juries. Under these circumstances, use of the words "the jury" was merely imprecise, and cannot be read to have any reference to a particular convened jury.

The position taken by our colleagues may be characterized by the following: "[t]he plaintiff sues for money. The defendant defends against an award of money. The jury is limited to expressing its findings in terms of money. Nevertheless the jury must be precluded from hearing any reference whatever to money" (Note, 12 Rutgers L Rev 522).

In closing, we simply note that we find this position untenable.

Finally, the plaintiffs contend that the jury award totaling $147,000 was grossly inadequate. Because we are reversing and ordering a new trial on the issue of damages, we do not reach this question of inadequacy. The judgment should be reversed, and a new trial granted limited to the issue of damages only.

SPATT, J. (concurring in part and dissenting in part). I concur to affirm the jury's findings of fact as to liability for the reasons stated in the majority opinion. As to the summation issue, I disagree with the determination of the majority and would hold that in a medical malpractice case, the plaintiff's counsel cannot request a specific dollar amount for general damages for pain and suffering and permanent injuries. In my view, such a practice is impermissible under the statutory and common law of this State.

At the outset, it is clear that, in a medical malpractice case, as in any other civil lawsuit, counsel have an absolute right to discuss the evidence in the case, which may include the sums set forth in the bill of particulars and proven for medical expenses and loss of earnings, past and future, and other special damages, just as they may discuss any other evidence in the case before the jury. As to those damages, counsel may, of course, request specific sums in summation. The discussion here concerns counsel's request of a specific monetary amount from the jury for pain and suffering and permanent injuries. In a medical malpractice case, this practice is impermissible on two separate but related grounds: namely, (1) the common law of this State only permits comments on the amount sued for in the pleadings, and (2) such comments in a medical malpractice case would be contrary to the legislative intent underlying CPLR 3017 (c) which prohibits a specific monetary demand in the pleadings. As CPLR 3017 (c), in effect, created a departure from the common law in this regard, it is necessary to first review the rule in this State which is the basis for counsel's request to a jury for general damages.

The law is well established that the right to make a specific monetary demand to a jury is governed by the contents of the complaint or counterclaim. The oft-repeated statement of the law is, the " 'plaintiff's counsel is entitled to place before the jury his client's contentions in this regard as set *forth in the complaint* and is therefore entitled to state the amount of damages demanded' " *(Terone v Anderson,* 54 AD2d 562, 563; emphasis supplied; *Williams v Long Is. R. R.,* 41 AD2d 940, 942; *Rice v Ninacs,* 34 AD2d 388, 392). These cases are the progeny of the seminal case of *Tisdale v President of Del. & Hudson Canal Co.,* 116 NY 416), in which the Court of Appeals held: "The object of pleadings is to define the issue between the parties and when an issue of fact is tried before a jury they cannot appreciate the evidence, as it is given, unless they know the nature of the issues to be decided. Hence it is customary and proper for counsel, *in opening,* to tell the jury what the issues are as well as what they expect to prove * * * The pleadings are before the court, not as evidence, but to point out the object to which evidence is to be directed * * * It is evident, therefore, that the established practice does not require that the contents of the pleading should be concealed from the jury, as improper evidence is required to be kept from their attention. *On the contrary, as the pleadings mark the boundaries within which the proof must fall, counsel upon either side are permitted to point out where they claim those boundaries are, before they introduce their evidence. So, when summing up, they restate the issues in order to logically apply the evidence to them"* (Tisdale v President of Del. & Hudson Canal Co., supra, at 419-420; emphasis supplied).

In *Rice v Ninacs (supra),* the Appellate Division, Third Department, clearly stated the rule in this regard, as follows:

"In any event, there is no merit to defendant's contention that it was improper for plaintiff's counsel to state on summation the amount demanded in the complaint. 'Pleadings are always before the court without being formally offered in evidence. They may be referred to by counsel during the trial and their contents may easily be brought to the attention of the jury.' *(Newton* v. *Livingston County Trust Co.,* 231 App. Div. 355, 362; *Holmes* v. *Jones,* 121 N. Y. 461, 466) * * *

"The extent of damages sustained by an injured plaintiff and the compensation due therefor is one of the principal issues in a personal injury action. Under the rule of the *Tisdale* case, plaintiff's counsel is entitled to place before the

jury his client's contentions in this regard as set forth in the complaint and is therefore entitled to state the amount of damages demanded" *(Rice v Ninacs, supra,* at 391-392).

In 1983, the Court of Appeals again addressed this issue in *Tate v Colabello* (58 NY2d 84), a motor vehicle accident case, as follows: "Nor is there any more merit to defendants' contention that a motion for a mistrial should have been granted when plaintiff's counsel, in summation, took the liberty to 'suggest' the sum he believed appropriate compensation for the injuries sustained, *the amount he thus named being within that demanded in the complaint.* It goes without saying that one of the functions of the jurors in this case was to translate the value of the infant's injuries and of her consequent pain and suffering into dollars and cents. In support of the path of reasoning by which he would persuade them on this subject, it was counsel's privilege 'to place before the jury his client's contentions in this regard' and, to this end, he was 'entitled to state the amount of damages demanded' *(Rice v Ninacs,* 34 AD2d 388, 392 * * *)" *(Tate v Colabello, supra,* at 87; emphasis supplied).

Other cases which have similarly relied upon the ad damnum clause as a basis for a monetary request to the jury are *Rush v Sears, Roebuck & Co.* (92 AD2d 1072) and *Kusisto v McLean* (52 AD2d 674).

In a similar vein, the Court of Appeals in *Loomis v Civetta Corinno Constr. Corp.* (54 NY2d 18, *rearg denied* 55 NY2d 801), held that a motion could be made after the verdict to increase the ad damnum clause to conform to the amount of the verdict. It is relevant to this discussion that in cases not involving medical malpractice, even after the verdict is rendered, it is necessary for the plaintiff to move to increase the ad damnum to conform to the verdict, supporting the theory that the ad damnum clause continues to be the crucial factor in setting the outer limits of a request to the jury for money damages.

The plaintiff's counsel is entitled to place before the jury his clients' contentions as to the amount of damages set forth in the complaint at various stages of the trial: during voir dire *(Pratt v Susquehanna Val. Cent. School Dist.,* 62 AD2d 1118), in the opening statement *(Tisdale v President of Del. & Hudson Canal Co.,* 116 NY 416, *supra),* and during summation. Of course, whenever such an amount is disclosed to the jury by counsel, the court should issue a curative charge "that

the jury must determine the amount of its verdict solely from the evidence, [and] that the allegations of plaintiff's complaint are not evidence and should not be considered as such by the jury in fixing the amount of its verdict" *(Terone v Anderson, supra,* at 563; *see also, Pratt v Susquehanna Val. Cent. School Dist., supra; Williams v Long Is. R. R., supra;* PJI 2:280).

Thus, prior to 1976, when CPLR 3017 (c) was enacted affecting only medical malpractice cases, the general rule clearly enunciated in this State was that the ad damnum clause of the complaint or counterclaim governed the amount that a party can request from a jury and the amount a jury can award. In 1980, CPLR 3017 (c) was amended to include actions against a municipal corporation, so that at the present time, the *Tisdale, Rice* and *Tate* rule is applicable to all civil actions to recover money damages in cases not involving medical malpractice or municipal corporations. It is in light of this common-law rule, solely dependent upon the amount set forth in the pleading, that we must analyze the impact of CPLR 3017 (c).

The Legislature enacted CPLR 3017 (c) as one of the provisions in a far-ranging 1976 medical malpractice bill (L 1976, ch 955) which was designed "to assure the continued availability of medical malpractice insurance to the doctors and hospitals in this State at reasonable rates" (1976 McKinney's Session Laws of NY, Governor's Special Message, at 2428). This bill amended provisions of the Insurance Law, the Judiciary Law and the CPLR. CPLR 3017 was amended to add a subdivision (c), which provided, in relevant part, that "[i]n an action for medical malpractice * * * the complaint, counterclaim, cross-claim, interpleader complaint, and third-party complaint shall contain a prayer for general relief but shall not state the amount of damages to which the pleader deems himself entitled" (CPLR 3017 [c]).

The statute is silent as to the propriety of stating a specific sum to the jury in summation or at any other stage of the trial. There is nothing in the legislative history or the judicial gloss which indicates that the Legislature ever considered the issue of specific monetary requests to a jury in summation. Therefore, it is necessary to review the legislative history and surrounding circumstances to attempt to ascertain the legislative intent (McKinney's Cons Laws of NY, Book 1, Statutes § 92). This court should consider the problems the Legislature sought to ameliorate and construe the statute in question so that it provides a remedy for those problems.

In his special message to the Legislature, Governor Hugh L. Carey discussed this provision of his over-all program, as follows:

"This legislation would require that a pleading in a medical malpractice case contain a prayer for general relief, rather than a demand for a specific amount of damages.

"Presently, demands in medical malpractice cases may be alleged by the plaintiff in any amount and are generally well in excess of the ultimate recovery. The amount demanded, however, very often receives extensive publicity in the news media, thereby unfairly damaging the reputation of the doctor or hospital involved. *It is also contended that, especially in medical malpractice cases, exaggerated demands are used to precondition the jury and result in excessively high awards*" (1976 McKinney's Session Laws of NY, Governor's Special Message, at 2428; emphasis supplied).

Clearly, one of the problems sought to be remedied by this statute was to negate the use of alleged "exaggerated" demands to "precondition the jury". Presumably, "the jury" refers to the particular jury to whom such a demand is made, which could result in "excessively high awards". The material included in legislative bill jacket is not enlightening on this issue. Most commentators simply noted that CPLR 3017 (c) would prevent a demand for specific money damages in the complaint, without amplification. A committee was appointed by Governor Carey to "review the entire medical malpractice question in New York". (1975 Public Papers of Gov. Hugh L. Carey, at 1699.) This committee was chaired by William J. McGill and prepared a 292-page report that provides little insight into legislative intent concerning this issue. The portion of the report dealing with CPLR 3017 (c) falls under the general heading "Limitation of Damages" and discusses only the question of adverse publicity.

In his 1976 Practice Commentaries to CPLR 3017 (c), Professor Siegel commented on the statute as follows: "The original Commentary C3017:1 notes that it is common practice in New York, in a money action, to state in the wherefore clause of the complaint the precise amount sought. That practice is now being changed, and statement of a specific sum precluded, in an action for medical malpractice. The change is effected by the addition of Subdivision (c) to CPLR 3017. Hence, even if the court's usual practice is to allow the plaintiff on summation to tell the jury how much the complaint demands (prac-

tice statewide is not uniform in this respect), there will be nothing to tell, hereafter, in a medical malpractice action, which will leave the jury to calculate the plaintiff's damages without the plaintiff's complaint demand as a guide. The amendment obviously postulates it to be a bad guide, in any event" (Siegel, 1976 Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3017:11, at 47 [1987 Pocket Part]).

The legislative history with regard to the addition of municipal corporations to the shelter provided by CPLR 3017 (c) is also not instructive (L 1980, ch 686, § 2). It appears that with respect to municipal corporations, the Legislature may have been concerned with, among other matters, the effect of "exaggerated" demands upon insurance carriers in establishing reserves (see, 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3017.14).

Our colleagues stress the importance of preventing "adverse publicity" as underlying the legislative intent in enacting CPLR 3017 (c). Although this was perceived to be an important consideration with regard to physicians, it has a much more limited application to municipalities which have faced a purported insurance crisis similar to the medical profession.

Surprisingly, since CPLR 3017 (c) was enacted in 1976, this problem has not often surfaced. However, with the increasing familiarity of the tort bar with the summation problem raised by CPLR 3017 (c), the issue is now being pressed before the Trial Judges and the appellate courts with greater frequency. Apparently, in the first several years after the enactment of the statute, in the event plaintiffs' counsel would state a monetary figure to the jury in a medical malpractice case, an objection on this ground would bring forth a curative charge and the matter would be put to rest. Increasingly, in the past several years, in medical malpractice cases, experienced trial counsel now ask for presummation rulings on this subject and have received varying responses.

In 1981, in *Vargas v Rosal-Arcillas* (108 Misc 2d 881, 884 [Sup Ct, Queens County]), Justice Lonschein stated that, "The purpose of this section is to prevent a plaintiff from impressing a jury by reading the *ad damnum* clause to them". In 1983, in *Thornton v Montefiore Hosp.* (120 Misc 2d 1003, 1005 [Sup Ct, Bronx County]), counsel for the plaintiff had requested $8,000,000 from the jury, and, without an amount in the complaint, obtained a verdict for $2,600,000. In deciding

defendant's motion to set aside the verdict, Justice Mercorella reduced the award to $925,030, and stated (at 1005) that "the amounts awarded may have been influenced by plaintiff's counsel's request in summation". With regard to the propriety of such a request in a medical malpractice case, the court made the following comment: "The court does have some reservations about this practice and would suggest some legislative action such as was taken in enacting CPLR 3017 (subd [c]). (Note that the *Tate* case apparently involved a complaint with a monetary demand where counsel has a privilege to suggest the amount demanded in the *ad damnum* clause of the complaint whereas the matter at hand is a medical malpractice case where only a prayer for general relief is permitted and plaintiff shall not state the amount of damages sought [CPLR 3017, subd (c).]) Yet there appears to be no prohibition on the part of counsel to suggest an amount that the jury may award. *(Tate v Colabello, supra.)" (Thornton v Montefiore Hosp., supra,* at 1005.)

On appeal in *Thornton,* the Appellate Division, First Department, further reduced the award to $484,480 and did not address the issue of the plaintiff's monetary request in summation *(see, Thornton v Montefiore Hosp.,* 99 AD2d 1024).

In the first direct appellate review of the effect of CPLR 3017 (c), the Appellate Division, Third Department, held that a party is not permitted to request a specific dollar amount for damages for pain and suffering in a medical malpractice case *(see, Bechard v Eisinger,* 105 AD2d 939; *see also, Bagailuk v Weiss,* 110 AD2d 284). In *Bechard,* the effect in summation of CPLR 3017 (c) was stated as follows: "CPLR 3017 (subd [c]) prohibits the pleadings in a malpractice action from containing a demand for a dollar amount of damages. The purpose of this stricture is, in part, to curb the effect of exaggerated demands for damages which could be read to the jury and thereby bias them towards making excessive awards (McKinney's Session Laws of NY, 1976, Governor's Special Message, p 2428; Siegel, Supplementary Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3017, 1983-1984 Pocket Part, pp 26-27). An attorney's reference in his jury summation in a malpractice trial to a specific dollar amount as an appropriate award is just as likely to produce the jury reaction which CPLR 3017 (subd [c]) was drafted to prevent. Accordingly, such statements might well be held to constitute reversible error" *(Bechard v Eisinger, supra,* at 941).

Although specific legislative intent as to whether, in a

medical malpractice case, CPLR 3017 (c) would preclude the practice of requesting a monetary amount in summations is not readily apparent, the Legislature is presumed to know the common law when it enacts a statute (McKinney's Cons Laws of NY, Book 1, Statutes § 191). We must, therefore, assume that the Legislature was aware that, by enacting CPLR 3017 (c), counsel would be inhibited from mentioning specific sums of money in summation as they had been permitted to do under the *Tisdale, Rice* and *Tate* line of cases. Further, the underlying Legislative purpose in enacting the entire package of medical malpractice legislation in 1976 was to attempt to reduce the cost of medical malpractice insurance. The statute is presumed to have effectuated the result intended. The law calls for a reasonable construction of the statute. In so doing, can we determine that CPLR 3017 (c) was intended only to prevent pretrial publicity rather than the immediate effect on a trial jury or the repercussions of postverdict publicity? The common-law standard dependent upon a monetary figure set forth in the complaint superimposed upon the CPLR 3017 (c) prohibition leads to the conclusion that a summation request as to general damages has been legislatively abrogated.

To hold that a medical malpractice complaint which can contain no specific monetary demand permits the plaintiff's counsel to make any monetary request to the jury deemed appropriate by counsel would give greater rights to a plaintiff in a medical malpractice case than in any other type of civil tort litigation wherein counsel is held within the bounds of the amount specified in the complaint. The Legislature certainly never intended such a result. However speculative, artificial and unrealistic the amount demanded in a complaint may be, it nevertheless serves as a self-created cap that the monetary request and verdict cannot exceed and thus acts as some guideline for counsel and the court. Significantly, this limiting figure has been the only basis used by our courts in giving counsel the right to place a monetary figure for general damages before a jury. Without the "amount in the complaint" doctrine enunciated in the *Tisdale, Rice* and *Tate* line of cases, there is no authority in our law for such a practice, and we are bound by these precedents. Further, there are remedial procedures which may be taken to correct either grossly inadequate or excessive verdicts at the trial and appellate levels. In fact, this case presents a proper case for the application of such a remedial procedure.

My colleagues in the majority suggest an unprecedented

approach to this dilemma in a medical malpractice case by requiring the Trial Judge to determine a "reasonable figure" based on the Judge's interpretation of the evidence, which "reasonable figure" the plaintiff's counsel can then suggest to the jury in summation. This "reasonable figure" determination would initiate an entirely new and previously unknown procedure in medical malpractice and municipal liability cases not authorized by any statute or rule and is a novel approach to civil litigation. According to the majority opinion, the basis for the innovative new procedure is to be found in the holding in *Tate v Colabello* (58 NY2d 84, *supra*). A review of the *Tate* case reveals that it is not a medical malpractice case, that the complaint contained a money damages demand, and that the plaintiff's counsel in summation suggested a sum to the jury which was "within that demanded in the complaint" *(Tate v Colabello, supra,* at 87). I see in the *Tate* ruling no departure from the prior rule merely because counsel suggested a figure to the jury less than the amount demanded in the complaint. That practice is a common and long-standing one in the trial courts. The practice of permitting counsel to suggest a figure less than the amount demanded in the complaint is surely permissible since the amount demanded is a ceiling only and not a mandatory number. Further, there is no statement in the *Tate* holding, directly or indirectly, requiring the Trial Judge to determine the figure to be suggested to the jury by the plaintiff's counsel. In my view, rather than a "departure from the prior rule", *Tate* is a reaffirmation of the well-settled principle that the ad damnum sets the maximum limits for either a monetary request in summation or the amount of the verdict itself *(see, Loomis v Civetta Corinno Constr. Corp.,* 54 NY2d 18, *supra).*

Also unclear is whether this new procedure would permit counsel to place before the jury at other stages of the trial such as the voir dire and openings their contentions as to the amount of general damages. The majority opinion discusses this issue only in the context of attorneys' summations, and states that the Trial Judge could make a "reasonable figure" determination prior to summations based upon the evidence. Pursuant to this proposed procedure, the Trial Judge would have to determine what is a "reasonable figure" either prior to the commencement of the trial to permit counsel to place this monetary amount before the jury in the voir dire and their openings, or, if this rule is intended to preclude counsel from mentioning any figure during any prior stages of the

trial, prior to summation. In the event this rule is interpreted so as to permit the continuation of the practice of permitting attorneys to mention a monetary figure during voir dire or in opening statements, implementation of the rule would require, at the least, an extensive pretrial conference preceded, perhaps, by formal motion papers, including medical affidavits, so that the parties could lay bare their proof as to damages.

Further, the court's determination of the "reasonable figure" could lead to additional problems such as the potential of disparate determinations by different Trial Judges as to a "reasonable figure" for similar injuries, the manner and timing of appellate review, and the effect of such a determination by the Trial Judge upon a motion to set aside a verdict as either excessive or inadequate. Also, the spectre of an appellate reversal or modification of the "reasonable figure", a subject which undoubtedly will attract the attention of appellate counsel, would place the ultimate verdict in the usual lengthy medical malpractice trial in greater jeopardy.

In sum, I decline to adopt the imposition of a new procedural "reasonable figure" determination by the Trial Judge on the grounds that (1) it is an unnecessary departure from the established *Tisdale, Rice* and *Tate* "amount in the pleadings" precedent in this State, (2) such a procedure is unauthorized by statute, rule or common-law precedent, and (3) such an additional step would present new and unusual trial and appellate problems not envisioned by the Legislature or previously sanctioned by our courts.

I am not inclined to depart from the common-law rule of confining the amount requested in summations to the monetary limitation in the pleadings. To do otherwise would not only be contrary to the legislative intent and purpose in medical malpractice cases, but it would create a class of litigants with different and arguably greater rights than all others in civil litigation. Thus, in this case, the trial court properly refused to grant the plaintiffs' application to request a specific monetary sum for general damages during summation.

Finally, the plaintiffs contend that the jury award totaling $147,000 was grossly inadequate. I agree. Therefore, the judgment should be reversed and a new trial granted limited to the issue of damages only, unless the defendant stipulates to increase the verdict in favor of the plaintiff Willi Braun to $300,000 and Melitta Braun to $50,000, to be reduced by 35%

representing Willi Braun's comparative negligence, and to the entry of an amended judgment accordingly.

Brown and Rubin, JJ., concur with Bracken, J.; Spatt, J., concurs in part and dissents in part and votes to reverse the judgment, on the facts and in the exercise of discretion, and to grant a new trial on the issue of damages only, unless the defendant stipulates to increase the verdict in favor of the plaintiff Willi Braun to $300,000 and in favor of the plaintiff Melitta Braun to $50,000, to be reduced by 35% representing Willi Braun's comparative negligence, and to the entry of an amended judgment accordingly, and in the event he so stipulates, to affirm the judgment as so increased and amended, with an opinion in which Mangano, J. P., concurs.

Justice Rubin has been substituted for the late Justice Gibbons (see, 22 NYCRR 670.2 [c]).

Ordered that the judgment is reversed, on the law, and a new trial is granted limited to the issue of damages only, with costs to abide the event. The findings of fact on the issue of liability are affirmed.