# (June 28, 1983)

■ LEONARD SHAW, Appellant, v MANUFACTURER'S HANOVER TRUST COMPANY et al., Respondents. — Judgment of the Supreme Court, New York County (Ostrau, J.), entered on January 15, 1982, which dismissed the complaint after a jury verdict on written interrogatories finding an absence of negligence attributable to any of the defendants, unanimously reversed, on the law and the facts and in the exercise of discretion, and the matter remanded for a new trial, with costs to abide the event. Plaintiff-appellant Leonard Shaw allegedly suffered permanent and debilitating spinal injuries when he was accidentally shot by defendant Donald Sommers, an off-duty New York City police officer who was working as a part-time teller in a Manufacturer's Hanover branch office when an armed robbery occurred on June 12, 1978. Appellant Shaw was waiting to transact business at a teller's counter when two armed robbers entered the bank and demanded money from a bank officer seated at a desk. The officer then entered the tellers' area, obtained the money, and delivered it to one of the robbers who then escaped. The other robber was standing with his gun pointed at the defendant Sommers when Sommers identified himself as a police officer, ordered the robber to drop his gun, and directed everybody else in the bank to get down on the floor. From a protected position behind a pillar, Sommers fired two shots at the remaining robber who did not return fire but merely stood there staring at Sommers. Both shots missed the robber, one narrowly missing a bank officer who was lying on the floor behind another pillar. At that point, the robber began moving toward the main entrance. On the way, he grabbed hold of Shaw, who had been crouching in the customers' waiting area, and attempted to use him as a shield as he successfully completed his escape. As the bandit, with appellant in tow, approached the entryway, Sommers, from his position behind the pillar with a partially obstructed view, fired two more shots in rapid succession. The last shot fired by

Sommers struck appellant, whom Sommers testified he had not seen. A new trial is required because the cumulative effect of certain prejudicial errors committed by the Trial Justice could have misled the jury in its evaluation of the evidence. The threshold issue to be decided by the jury was whether Sommers was negligent in discharging his handgun under the circumstances present during the robbery. Yet the Trial Justice allowed counsel for the bank to inform the jury in his opening remarks, over objection, that the firearms discharge review board of the police department had found that Sommers had acted reasonably. The subsequent curative instructions were inadequate to dispel the harm done, especially in light of later testimony introduced by defendants of the procedures followed by that board. In *Werber v City of New York* (87 AD2d 768), we similarly reversed a judgment entered upon a jury verdict dismissing the complaint of a citizen injured by an off-duty police officer, on the ground that the trial court had improperly admitted into evidence a police report which stated that the firearms discharge review board had found the officer's conduct acceptable. The disclosure in the bank's opening statement was even more prejudicial to plaintiff in view of the Trial Justice's refusal to permit expert testimony for the plaintiff on the issue of whether Sommers' actions were a departure from good and accepted police practice under the circumstances. Plaintiff-appellant had offered the testimony of a former New York City Police Department detective sergeant and firearms instructor, who would have testified that Sommers' conduct under the circumstances violated good and accepted police practice. The Trial Justice refused to permit such testimony because it went to the ultimate issue to be decided by the jury, and on the ground that expert testimony was unnecessary because the police department's relevant rules and regulations were in evidence. The relevant regulation, contained in the police department patrol guide, provides in pertinent part: "USE OF FIREARMS. In addition to Penal Law restrictions on the use of deadly physical force (See Article 35.00, P.L.), members of the service will adhere to the following guidelines concerning the use of firearms * * * 6. *Do not discharge firearm if innocent persons may be endangered* * * * The above guidelines are not meant to restrict a member in the performance of his lawful duty, but are intended to reduce shooting incidents and consequently protect life and property. In every case, department policy requires only the minimum amount of force be used consistent with the accomplishment of the mission." (Emphasis supplied.) Although we do not hold that the trial court abused its discretion in excluding the expert testimony proffered by plaintiff, the effect of such exclusion was to increase the prejudicial effect of defendant's opening remarks about the finding by the firearms discharge review board. It was also error for the trial court to instruct the jury on the applicability of the emergency rule and permit them to apply that standard in evaluating the reasonableness of Sommers' conduct. Although plaintiff's counsel did not object to the emergency charge, we consider the error so fundamental that we review it in the interests of justice. (See *Rivera v Bronx-Lebanon Hosp. Center,* 70 AD2d 794, 796.) The bank is not entitled to the emergency instruction because the possibility of a bank robbery cannot be said to be one that is not anticipated. In the words of Prosser, "[a] further qualification which must be made is that some 'emergencies' must be anticipated, and the actor must be prepared to meet them when he engages in an activity in which they are likely to arise." (Prosser, Law of Torts [4th ed], p 170; see, also, *Aldrich v Madison Taxi of Buffalo,* 49 AD2d 1012 [handicapped pedestrian in unmarked crosswalk not such an unforeseeable occurrence as to entitle taxidriver to emergency charge].) In the present case, the employees of the bank were instructed on what to do in the event of an armed robbery. Sommers testified

that he was instructed to do nothing that would provoke an armed robber. Sommers testified further that he was aware that there were customers in the bank at the time of the robbery. Thus, Sommers' response to the robbery was in direct contravention of both the rule of the bank not to provoke an armed robber and the police department regulation against discharging a weapon when innocent persons may be endangered. Throughout the trial, counsel for Manufacturer's Hanover advanced the dubious contention that as soon as Sommers announced that he was a police officer he was no longer a servant of the bank but was acting solely in his role as a police officer. In light of the testimony that Sommers was paid for part-time work at a higher hourly rate than full-time tellers earned, and evidence that the bank valued the "extra protection" Sommers' presence at the bank afforded, liability cannot be avoided by this argument. If, as the bank argues, Sommers was in a "Catch 22" position between the bank's no-provocation rule and his duty as a police officer, he was placed in that situation by his employer, the bank. A further limitation on the availability of the emergency rule charge is that the actor did not aggravate or create the emergency situation by his own conduct. Sommers' conduct, in direct contravention of the bank's no-provocation rule, increased the danger inherent in the situation. Bank officer Smith testified that the robber at whom Sommers·fired the shots recognized Sommers as a police officer and stated, before the other robber had been handed the money, "I know he's a cop. If he touch the gun, I'll shoot him." Thus, when Sommers took cover behind the pillar, announced he was a police officer and ordered everyone in the bank to get down, he aggravated the already existing emergency situation. Accordingly, defendants were not entitled to the emergency charge. Had Sommers abided by the bank's instruction not to provoke armed robbers, it is possible that both robbers, who never returned fire, would have left the bank without harming anyone. In view of the foregoing, we consider it unnecessary to reach the question as to whether the verdict was against the weight of the evidence. Concur — Murphy, P. J., Kupferman, Sandler, Carro and Lynch, JJ.