Shirley A. Bagailuk et al., Respondents, v Henry W. Weiss, Appellant, et al., Defendants.

Third Department, October 17, 1985

### APPEARANCES OF COUNSEL

*O'Connor, McGuiness, Conte, Doyle, Oleson & Collins* (*Dianne Bresee Mayberger* of *Carter, Conboy, Bardwell, Case & Blackmore* of counsel), for appellant.

*David Jaroslawicz* and *Abraham Jaros* for respondents.

### OPINION OF THE COURT

Main, J.

On January 21, 1979, plaintiff Shirley A. Bagailuk (hereinafter plaintiff) appeared at the emergency room of the Hamilton Avenue Hospital (hereinafter Hamilton) in the Village of Monticello, Sullivan County, complaining of difficulty in breathing and of severe abdominal pains. She was seen by Dr. Carl K. Heins, a surgeon, who prescribed medication and sent plaintiff home. Four days later, plaintiff arrived at Hamilton again complaining of severe stomach pains and difficulty in breathing. She was examined by defendant Dr. Henry W. Weiss (hereinafter defendant), a general practitioner, who admitted plaintiff into the hospital. On January 29, 1979, plaintiff's gall bladder was removed by Heins, who was assisted by defendant. On February 2, 1979, during her recovery from the surgery, plaintiff was suffering from severe headaches and, on Heins' order, she was transferred to Hamilton's intensive care unit. Later that same day, plaintiff was intubated with an endotracheal tube at Heins' direction in an attempt to assist her breathing, which had become strained.

The tube was left inserted until February 8, 1979, when an emergency tracheotomy was performed on plaintiff by Heins, who was assisted by a Dr. Chen. Plaintiff was discharged 10 days later, still requiring the assistance of a tracheotomy tube because she still was experiencing breathing difficulties and an accompanying hoarseness of voice. Plaintiff's problems failed to subside and she was readmitted on March 1, 1979 to Hamilton, where she remained for three days, after which she was transferred to the Harris County Hospital for a period of four days. Thereafter, plaintiff was taken to the Columbia Presbyterian Hospital in New York City, where she was diagnosed as suffering from postintubation laryngeal stenosis, larynx stenosis and glottic and subglottic stenosis. Over a two-year period, eight separate operative procedures were carried out, all aimed at enlarging the air passage near plaintiff's larynx by separating the vocal cords, which had fused, thereby restricting the breathing process.

Plaintiff then commenced this action against Heins, defendant and Hamilton alleging that by reason of their negligence, i.e., the prolonged presence of the endotracheal tube and failure to seek counsel from an otolaryngologist, she had suffered permanent personal injuries. A separate cause of action for loss of consortium was commenced by her husband. Prior to commencement of the trial of this action, plaintiffs settled with Heins and Hamilton for the sum of $100,000, and the case against defendant went forward. At the conclusion of the trial, the jury found that plaintiff had been damaged to the extent of $1,000,000 and her husband in the sum of $10,000. In apportioning fault, the jury found defendant 75% to blame and Heins 25% to blame.

Defendant appeals, seeking a reversal of the judgment, contending, *inter alia,* that he was denied a fair trial by the prejudicial and inflammatory remarks of plaintiffs' counsel during his summation, that the jury apportionment of fault was against the weight of the evidence, that the verdict was excessive and that the trial court erred and abused its discretion in permitting certain rebuttal testimony.

Defendant's claim of improper and prejudicial comments by plaintiffs' attorney during his summation centers in large part on four separate series of comments. First, plaintiffs' attorney proposed or suggested several large specific sums of money as awards for pain and suffering and further suggested the sum of $10,000 annually for the 26 years which plaintiff might have been expected to work as damages for her lost earning ability. We have recently found such conduct to be highly improper

(*Bechard v Eisinger,* 105 AD2d 939, 941) for the obvious reason that it results in counsel becoming an unsworn witness rendering opinion testimony which would not have been admissible into evidence (*see, Kusisto v McLean,* 52 AD2d 674, 675). Moreover, such conduct emasculates the purpose of CPLR 3017 (c), which at least in part was enacted to curb the effect of exaggerated demands for damages which could be read to the jury and thereby bias them toward making excessive awards (*Bechard v Eisinger, supra,* p 941). Second, when commenting upon the jury's task of apportioning negligence, counsel stated that "if you, the jury, put down a percentage for Hamilton Avenue Hospital or Dr. Heins, it reduces the amount of money you are giving [plaintiff] by that percentage". Not only was this statement improper by reason of the fact that Hamilton and Heins had settled with plaintiffs for $100,000, but it was also erroneous since the apportionment would have no effect on the amount that plaintiffs received if the verdict were $100,000 or less (*see,* General Obligations Law § 15-108).

On another occasion, plaintiffs' counsel, in an obvious attempt to diminish or destroy the effect of the medical malpractice panel's unanimous finding of no negligence, berated the defense for not calling a doctor who was on the panel as a witness, suggested to the jury that defendant and his counsel provided the panel with misleading information and accused defense counsel of attempting to deceive the jury during trial. Under the circumstances, these comments were improper, inflammatory and prejudicial.

On the fourth occasion, plaintiffs' counsel accused defendant, who was not present during the early stages of the trial, of hiding in New York City so that plaintiffs' counsel could not call him to the stand and so that defendant could testify after the other witnesses and "tailor his testimony and change his testimony to conform to what had been said in court". The record shows that defendant, a Florida resident, sought a delay in the commencement of the trial because of alleged medical problems and, when denied the delay, proceeded to attend the trial. In our view, these remarks were highly inflammatory and prejudicial and without basis in the record.

The record reveals that defendant's counsel made an immediate objection only as to that portion of plaintiffs' counsel's summation dealing with the subject of apportionment of fault, and plaintiffs contend that his failure to object to the other comments constituted a waiver and precludes our review. Plaintiffs' counsel further maintains that if any of his comments were improper, they were cured by the trial court's instructions.

We disagree. While defense counsel objected promptly only as to the apportionment of fault comments made during the summation, at the conclusion thereof he moved for a mistrial and advised the court as to the portions of the summation that he objected to, as well as the course of action that he desired the court to follow. While perhaps the preferred practice would be to lodge an objection when the improper comment is made, a motion for a mistrial promptly made before the jury is charged fulfills the purpose of the requirement calling for prompt objections, since it affords the court an opportunity for any corrective action it deems appropriate. We are also unable to conclude that the curative instructions could neutralize the inflammatory and erroneous comments. While curative instructions were included in the court's charge, we are not constrained to find curative instructions adequate (*see, Shaw v Manufacturers Hanover Trust Co.*, 95 AD2d 738, 739).

In our view, plaintiffs' counsel's grasping for the minds of the jury through these inflammatory, prejudicial and erroneous comments so contaminated the trial at a critical stage as to deny defendant's right to a fair trial. We conclude that the errors were fundamental and require a new trial in the interest of justice and the exercise of discretion (*see, Rivera v Bronx-Lebanon Hosp. Center,* 70 AD2d 794, 796; *Rodriguez v Cato,* 63 AD2d 922). This determination renders unnecessary any discussion of the other claimed errors.

MAHONEY, P. J., CASEY, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment reversed, on the law and the facts, and matter remitted to Trial Term for a new trial, with costs to abide the event.