931 F.2d 196
 20 Fed.R.Serv.3d 388
 The GOLDEN BUDHA CORPORATION, Plaintiff-Appellant,
v.
The CANADIAN LAND COMPANY OF AMERICA, N.V., a Corporation,
et al., Defendants,
The Canadian Land Company of America, N.V., a Corporation;
Herald Center Ltd., a Corporation; N.Y. Land (CF8), Ltd.,
N.V., a Corporation; Manhattan Land Co., Inc., a
Corporation; N.Y.L., Inc., Individually and doing business
as The New York Land Company; N.Y.L. Properties, Inc., a
Corporation, Defendants-Appellees.
 No. 753, Docket 90-7676.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 11, 1990.
Decided April 22, 1991.
 
 Diane W. Wilson, New York City (George N. Tompkins, Jr., Condon & Forsyth, New York City, Daniel C. Cathcart, Magana, Cathcart, McCarthy & Pierry, Los Angeles, Cal., of counsel), for plaintiff-appellant.
 Michael J. Silverberg (Phillips, Nizer, Benjamin, Krim & Ballon, Philip R. Carter, Bernstein & Carter, Martin H. Samson, of counsel), New York City, for defendants-appellees.
 Before TIMBERS, KEARSE and MINER, Circuit Judges.
 MINER, Circuit Judge:
 
 
 1
 Plaintiff-Appellant The Golden Budha Corporation ("Appellant") appeals from a judgment entered in the United States District Court for the Southern District of New York (Leval, J.) in favor of defendants-appellees The Canadian Land Company of America, N.V., Herald Center Ltd., N.Y. Land (CF8), Ltd., The Manhattan Land Co., Inc., individually and doing business as The New York Land Company and N.Y.L. Properties, Inc. ("Appellees") dismissing all claims pleaded against them in the complaint. Appellant, a Georgia corporation, is the assignee of the interest of one Roger Roxas in the "Yamashita Treasure," alleged to have been unearthed by Roxas in the Philippines in 1971. Included in the complaint are claims for conversion of the treasure-trove and for fraud, fraudulent conveyance and imposition of a constructive trust relating to the acquisition and disposition of the treasure-trove by appellees. According to the complaint, the appellees are entities that have been under the dominion and control of Ferdinand and Imelda Marcos, former President and First Lady of the Republic of the Philippines, respectively, who allegedly stole the treasure from Roxas in the first instance.
 
 
 2
 Finding the conversion claim barred by the statute of limitations and the claims for fraud, fraudulent conveyance and imposition of a constructive trust defective for failure to state claims upon which relief may be granted, the district court dismissed the complaint in its entirety. The district court also denied, sub silentio, appellant's request to amend its complaint to replead the claim of fraud with more specificity.
 
 
 3
 On appeal, appellant argues that dismissal of the conversion claim on statute of limitations grounds was improper in light of its equitable estoppel contention; that the district court erred in requiring proof of insolvency to support a claim of fraudulent conveyance; that dismissal of the constructive trust claim was bottomed improperly upon failure to demonstrate the existence of a fiduciary duty; and that the district court should have granted leave to appellant to plead the fraud claim with more particularity. Appellant also contends that the district court erred in considering matters outside the complaint in dismissing for failure to state claims, thereby treating the motion as one for summary judgment without giving appellant the opportunity to oppose with rebutting evidence. For the reasons that follow, we vacate the judgment of the district court and remand for further proceedings.
 
 BACKGROUND
 
 4
 The provenance of the Yamashita Treasure is shrouded in mystery. According to the complaint, it was "hidden in The Philippines by the Japanese occupation forces prior to the end of World War II and the fall of The Philippines in 1945," and was comprised of gold bullion, precious stones, jewelry, works of art and coins, as well as the enigmatic golden buddha from which appellant derives its misspelled name. Although appellees question whether the treasure ever existed, it is an historical fact that Lieutenant General Tomoyuki Yamashita, "the Tiger of Malaya," served as Commander of Japanese forces in the Philippines during World War II. See W. Manchester, American Caesar: Douglas MacArthur 1880-1964, at 382-83 (1978). General MacArthur accused Yamashita of sacking the City of Manila and its shrines and monuments and urged his execution as a war criminal. Id. at 487. It is interesting to note that, upon his withdrawal from Manila, General Yamashita established headquarters at Baguio, 150 miles north of Manila. Id. Baguio is located not far from the place where the treasure allegedly was recovered and is the city where Roger Roxas resided when the treasure purportedly was taken from him. General Yamashita has been referred to as a forceful and brilliant commander and Japan's most able tactician, best known for defeating the British defenders of Singapore when they outnumbered his forces by more than three to one. Id. at 486. He was executed in the Philippines for his war crimes on February 23, 1946, but there are those who contend that he was innocent of the atrocities with which he was charged, that he was not accorded due process in his trial, and that General MacArthur exercised more than a modicum of "command influence" in the proceedings. Id. at 487-88. Whether or not the treasure purportedly uncovered by Roger Roxas, including the golden buddha, was the plundered cache of Tomoyuki Yamashita need not be answered here.
 
 
 5
 In an adventure worthy of Indiana Jones, Roxas unearthed the treasure, which he valued at $600 billion, on January 24, 1971, near a town called Buguias. In a report of investigation submitted by the Committee on Justice of the Senate of the Philippines relative to the forcible taking of the treasure from him, Roxas is described as a merchant who buys old Spanish coins and hunts for treasure. According to the Report, Roxas claims to have found the golden buddha at a location "near Buguias, between Loo and Cadayan Baguio" after he was told to search there by two Japanese nationals. The search was said to have taken seven months, with more than thirty men assisting in the excavation. The money for the expedition allegedly was furnished by a brother and a brother-in-law of Roxas. When the buddha was uncovered, twelve men were required to lift the statue and load it onto a pickup truck. It then was taken to the Roxas home in Baguio City, from which it was alleged to have been forcibly taken by agents of Ferdinand and Imelda Marcos, acting under color of law. Mr. Roxas claims that he was arrested, imprisoned and tortured to reveal the location of the rest of the treasure. After he was released, he says that he was constrained to remain in hiding until President and Mrs. Marcos left the Philippines on February 26, 1986. During his years in hiding, he was unable to learn what had become of the Yamashita Treasure. Roxas contends that he first learned that the Marcoses owned property in New York when their indictment in the Southern District of New York became public on October 22, 1988. He then assigned his rights in the Yamashita Treasure to appellant, a corporation having its principal place of business in Atlanta, Georgia and owned by a long-time friend, Felix Decanay. It is appellant's contention that at least 50% of the treasure-trove became the property of Roger Roxas according to Philippine law.
 
 
 6
 Pleaded in the complaint are four claims, each labelled a "cause of action." The first, designated "Conversion," includes an allegation that the Marcoses seized the Yamashita Treasure from Roxas on April 5, 1971 for their own personal use and benefit, entered into a scheme with the appellees to hide and secrete the treasure and its proceeds and arranged with appellees "to convert said proceeds into both real and personal property located in the city of New York, State of New York and elsewhere." In the second claim, entitled "To Impose A Constructive Trust," a demand is made "[t]hat the defendants, and each of them, be deemed to hold the treasure and all proceeds from the sale, use and investment thereof in trust for plaintiff."
 
 
 7
 In the claim entitled "Fraud," it is alleged that the appellees conspired with each other and with the Marcoses to hide the treasure and its proceeds by "setting up and controlling shell corporations in foreign countries and elsewhere so as to hold title to certain real and personal property belonging to plaintiff." The proceeds are said to have been invested in New York real estate, including the Crown Building, the Herald Center, Forty Wall Street and Two Hundred Madison Avenue, as well as in real estate located in Rome and Honolulu and in various foreign and domestic bank accounts. Finally, in a claim designated "Fraudulent Conveyances," appellant alleges that appellees "disposed of portions of the Yamashita Treasure to third parties including relatives, friends, and corporations owned and controlled by the defendants, and each of them, all for inadequate consideration and all for the purpose of permanently depriving the plaintiff of its property." Appellees are five of the six defendants served with the summons and complaint in this action. The sixth defendant, California Overseas Bank, was dismissed on its motion for want of personal jurisdiction.
 
 
 8
 The appellees moved to dismiss the complaint before service of an answer. Applying the three-year statute of limitations mandated by N.Y.Civ.Prac.L. & R. Sec. 214(3) & (4) (McKinney 1990), the district court dismissed the conversion claim, holding that Roxas' claim accrued in 1971 when he became aware that his property was taken and was under the dominion and control of the Marcoses. Even assuming an equitable estoppel by reason of Roxas being in hiding in the Philippines and lacking a fair forum for pursuit of his claims, the district court found the claim barred because "[p]laintiff did not bring suit until June 6, 1989, well over three years after Marcos's departure from the Philippines" in February of 1986. In yet a third approach to the statute of limitations issue, the district court found, on the basis of articles published in newspapers in the Philippines in March and April of 1986 regarding a civil suit in the Southern District of New York involving the Marcos investments in properties owned by the defendants, "that the cause of action for conversion accrued no later than April, 1986."
 
 
 9
 In dismissing the claim for fraud, the district court noted the lack of any "allegation of any representation, or act amounting to a representation, made to Roxas which was deceptive and on which plaintiff relied." The district court saw the fraud claim as "a vain attempt to avoid the three-year limitation on claims for conversion" by recasting the claim. Although appellant sought leave, in its papers opposing the motion to dismiss, to plead the fraud claim with more specificity, the district court declined to rule on the request. The "Fraudulent Conveyances" claim was dismissed for failure to allege "that any of the defendants were insolvent, were rendered insolvent, or unable to honor obligations to plaintiff as a result of making transfers" as required by N.Y.Debt. & Cred.Law Sec. 273 (McKinney 1990). Finally, the "Constructive Trust" claim was dismissed because appellant did not allege three of the four elements required by New York law for the imposition of a constructive trust: "Plaintiff does not allege any ... confidential relationship, nor that a promise was made, nor that a transfer was made in reliance on the promise."
 
 DISCUSSION
 
 10
 In New York, "[i]t is the rule that a defendant may be estopped to plead the Statute of Limitations where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Simcuski v. Saeli, 44 N.Y.2d 442, 448-49, 377 N.E.2d 713, 716, 406 N.Y.S.2d 259, 262 (1978); see also Jordan v. Ford Motor Co., 73 A.D.2d 422, 424, 426 N.Y.S.2d 359, 360 (4th Dep't 1980); 75 N.Y.Jur.2d Limitations & Laches Sec. 32 (1989). The plaintiff is said to bear the burden of establishing that the action has been brought within a reasonable time after the facts forming the basis for the estoppel no longer are operational. Simcuski, 44 N.Y.2d at 450, 377 N.E.2d at 717, 406 N.Y.S.2d at 263. "Whether in any particular instance the plaintiff will have discharged his responsibility of due diligence in this regard must necessarily depend on all the relevant circumstances." Id. at 450, 377 N.E.2d at 717, 406 N.Y.S.2d at 263. In the case at bar, as in Simcuski, "[i]t is not possible or appropriate ... on the present motion addressed to the pleading, presenting us as it must with only a skeletal record, to determine whether this plaintiff met [its] obligation of due diligence when [it] instituted the present action in [June, 1989]." Id. at 451, 377 N.E.2d at 717, 406 N.Y.S.2d at 263-64. Indeed, it is questionable whether an equitable estoppel defense to a statute of limitations claim under circumstances such as those revealed here even can be resolved on a summary judgment motion. See Renda v. Frazer, 75 A.D.2d 490, 496, 429 N.Y.S.2d 944, 948 (4th Dep't 1980).
 
 
 11
 The appellees are accused of acting in concert with the Marcoses to convert Roxas' property in a scheme involving fraudulent deception designed to cover up their wrongdoing and to prevent Roxas and his assignee from knowing that the appellees were in any way involved in the conversion. Appellant contends that Roxas was unaware of the involvement of the appellees until the indictment of the Marcoses was made public in October of 1988. Despite these assertions, the district court proceeded to a finding, on a motion addressed to the face of the complaint, that the facts giving rise to any equitable estoppel ceased to be operational more than three years before the action at bar was commenced.
 
 
 12
 To arrive at its factual finding, the district court was constrained to examine matters outside the complaint, including articles appearing in newspapers published in the Philippines, which it determined that Roxas should have seen. It is noteworthy that some of the factual material was submitted to the court only in rebuttal to the papers submitted in opposition to appellees' 12(b)(6) motion. It is, of course, improper to treat such a motion as one for summary judgment in which matters not appearing on the face of the complaint may be brought to the court's attention, without giving "all parties ... reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). No such opportunity was given to appellant, and it simply was improper to dispose of the equitable defenses to the statute of limitation claim when there remained a factual issue as to just how long the critical information had been concealed from the appellant and its assignor. Also not to be resolved on the papers properly submitted on the motion was the question of due diligence in bringing the action, "an essential element for the applicability of the doctrine of equitable estoppel, to be demonstrated by the [appellant] when [it] seeks the shelter of the doctrine." Simcuski, 44 N.Y.2d at 450, 377 N.E.2d at 717, 406 N.Y.S.2d at 263.
 
 
 13
 There is another significant aspect of the statute of limitations defense applicable here. The complaint can be read to allege that the appellees, or some of them, received certain items of the Yamashita Treasure innocently. In that case, the three year statute of limitations would not begin to run until there was a demand for the return of the stolen property and a refusal to return it. See Solomon R. Guggenheim Found. v. Lubell, 77 N.Y.2d 311, 317-18, 569 N.E.2d 426, 429, 567 N.Y.S.2d 623, 626 (1991). Where recovery is sought from an innocent purchaser, no duty of reasonable diligence is imposed under New York law upon the owner of stolen property, although the owner's laches may be taken into account. Id. at 318, 569 N.E.2d at 429, 567 N.Y.S.2d at 626. But see DeWeerth v. Baldinger, 836 F.2d 103, 109-10 (2d Cir.1987), cert. denied, 486 U.S. 1056, 108 S.Ct. 2823, 100 L.Ed.2d 924 (1988).
 
 
 14
 Relying on N.Y.Debt. & Cred.Law Sec. 273, the district court determined that no claim for fraudulent conveyance was established in the complaint because of a failure to plead the statutory elements of such a claim: a conveyance of property made "by a person who is or will be thereby rendered insolvent ... without regard to his actual intent if the conveyance is made ... without fair consideration." Since no insolvency on the part of any of the appellees was pleaded, and there was no allegation that any of the appellees was unable to meet its obligations to the appellant as a result of the transfer, the district court concluded that the complaint failed to state a claim for fraudulent conveyances. The district court erred.
 
 
 15
 N.Y.Debt. & Cred.Law Sec. 276 (McKinney 1990) provides:
 
 
 16
 Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.
 
 
 17
 It is clear that, under this section, insolvency need not be pleaded or proved where a conveyance is attacked as made with intent to defraud creditors. If "the transferee participated or acquiesced in the transferor's fraudulent design ... the transaction falls within the condemnation of the fraudulent conveyance statutes, without regard to the adequacy or nature of the consideration, the solvency of the transferor, or the primary purpose of the transferee to secure a profitable purchase." 30 N.Y.Jur.2d Creditors' Rights Sec. 243 (1983) (see cases cited therein). Of course, actual intent, consisting of intentional deception to frustrate legal rights, must be established. Southern Indus., Inc. v. Jeremias, 66 A.D.2d 178, 181, 411 N.Y.S.2d 945, 948 (2d Dep't 1978). Ordinarily, the issue of fraudulent intent cannot be resolved on a motion for summary judgment, being a factual question involving the parties' states of mind. See Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 711 (2d Cir.1991) (summary judgment inappropriate for claim based on Connecticut fraudulent conveyance statute similar to N.Y.Debt. & Cred.Law Sec. 276). It follows that appellant's claim for fraudulent conveyances was pleaded properly.
 
 
 18
 The district court also erred in concluding that the complaint failed to plead the elements of a constructive trust. Indeed, the court determined that three of the four necessary elements were lacking: a confidential or fiduciary relationship; a promise, express or implied; and a transfer in reliance on the promise. The court identified the fourth element, unjust enrichment, but did not find it lacking. Although the four factors were set out by the New York Court of Appeals in Sharp v. Kosmalski, 40 N.Y.2d 119, 121, 351 N.E.2d 721, 723, 386 N.Y.S.2d 72, 75 (1976), the same court later noted that, "[a]lthough the factors are useful in many cases constructive trust doctrine is not rigidly limited," Simonds v. Simonds, 45 N.Y.2d 233, 241, 380 N.E.2d 189, 193, 408 N.Y.S.2d 359, 363 (1978). The purpose of a constructive trust is said to be the prevention of unjust enrichment, and even innocent parties may be unjustly enriched. Id. at 242, 380 N.E.2d at 194, 408 N.Y.S.2d at 364. No breach of promise is necessary for the imposition of a constructive trust, which "will be erected whenever necessary to satisfy the demands of justice." Latham v. Father Divine, 299 N.Y. 22, 27, 85 N.E.2d 168, 170 (1949). Simply stated, to impose a constructive trust, "[w]hat is required, generally, is that a party hold property 'under such circumstances that in equity and good conscience he ought not to retain it.' " Simonds, 45 N.Y.2d at 242, 380 N.E.2d at 194, 408 N.Y.S.2d at 364 (quoting Miller v. Schloss, 218 N.Y. 400, 407, 113 N.E. 337, 339 (1916)). In pleading as in proof, a constructive trust is a flexible device and must not be bound by an "unyielding formula." Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 389, 122 N.E. 378, 381 (1919) (Cardozo, J.). Appellant adequately has pleaded the elements of a claim for the imposition of a constructive trust, since it appears from the complaint that defendants hold property they should not retain, in good conscience and equity, under the circumstances revealed.
 
 
 19
 No legally-sufficient claim for fraud is stated in appellant's complaint. In attempting to plead the claim, appellant merely alleges that appellees fraudulently conspired to hide the treasure, executed false and misleading documentation as to the true ownership of the real and personal property held by each of them, and conspired to fraudulently conceal the treasure in certain foreign and domestic bank accounts under fictitious names. As the district court correctly observed, these allegations do not form the basis for any claim of fraud. Such a claim requires a false misrepresentation of a material fact, by one who knows it to be false, for the purpose of inducing another to rely upon it, as well as actual reliance to his injury by the defrauded party in ignorance of the falsity. Murray v. Xerox Corp., 811 F.2d 118, 121 (2d Cir.1987). The necessary allegations are totally absent from the complaint.
 
 
 20
 Although appellant in its brief on appeal asks for leave "to plead fraud more specifically under Philippine or New York law," the problem is not the need to plead with more particularity. The problem is that appellant has not pleaded any fraud claim at all. Moreover, in opposing appellees' motion to dismiss in the district court, appellant, although it requested leave to amend the complaint, failed to put forward any facts upon which a claim of fraud might be based. However, since we are vacating the judgment of the district court and restoring the action to the status quo ante there, appellant will have the right to amend the complaint once as a matter of course, no responsive pleading having been served. Fed.R.Civ.P. 15(a); see generally 6 C. Wright, A. Miller & M.K. Kane, Federal Practice & Procedure Sec. 1483, at 582 (1990).
 
 CONCLUSION
 
 21
 We vacate the judgment of the district court and remand for further proceedings consistent herewith. The complaint is reinstated, except as to the fraud claim pleaded therein. As to that claim, appellant may amend the complaint once as a matter of course.