**Michael Christopher MILANO, an infant, by his parents and natural guardians, Christopher MILANO and Jeanne Milano, and Christopher Milano and Jeanne Milano, individually, Plaintiffs,**

v.

**Jay A. FREED, Marvin A. Lieber, Arnold W. Scherz, Mitchell Kleinberg and Stephanie Citerman, individually and doing business as Freed, Lieber, Scherz, Kleinberg and Citerman, a partnership, Richard Silvergleid, Manhasset Diagnostic Imaging, P.C. and Alan D. Rosenthal, Defendants.**

No. CV–90–4298 (ADS).

United States District Court, E.D. New York.

June 19, 1991.

Kramer & Kramer, New York City by Edward C. Kramer, for plaintiffs.

Rossano, Mose, Hirschhorn & Corleto, P.C., Garden City, N.Y. by Gregory J. Volpe, for defendants Richard Silvergleid and Manhasset Diagnostic Imaging, P.C.

Bower & Gardner, New York City by Henry Z. Schaub, for defendant Alan D. Rosenthal.

Heidell, Pittoni, Murphy & Bach, P.C., New York City by Bruce F. Gilpatrick, for defendants Jay A. Freed, Marvin A. Lieber, Arnold W. Scherz, Mitchell Kleinberg, Stephanie Citerman and Freed, Lieber, Scherz, Kleinberg & Citerman.

## MEMORANDUM AND ORDER

SPATT, District Judge.

This medical malpractice action, filed in the United States District Court on the basis of diversity of citizenship, raises the issue of whether the plaintiff is bound by a New York State law, enacted in 1976 in response to the perceived crisis in the insurance industry, which precludes pleading a specific monetary amount of damages in a complaint in a medical malpractice action.

## I. BACKGROUND

The plaintiffs allege that the defendants' untimely diagnosis of neuroblastoma caused plaintiff Michael Christopher Milano, at the time less than six months old, to become paralyzed and unable to use his bladder without a catheter.

The complaint was filed in the United States District Court on December 13, 1990. Subject matter jurisdiction was based on diversity of citizenship (*see* 28 U.S.C. § 1332). The complaint alleges three causes of action: (1) a malpractice cause on behalf of infant Michael Christopher Milano; (2) lack of informed consent; and (3) the parents' cause for loss of services and medical expenses. The first and second claims seek recovery of $20,000,000 each; the third claim seeks $7,000,000.

Defendants Richard Silvergleid and Manhasset Diagnostic Imaging, P.C. (the "defendants") move (1) to strike "the plaintiffs' Complaint as defective in that it contains a specific prayer for monetary relief in derogation of New York Civil Court rules Section 3017"; and (2) to strike the plaintiff's third cause of action because it is untimely.

## II. THE MOTION TO STRIKE THE COMPLAINT

The defendants move to strike the *ad damnum* clause in the complaint on the basis of N.Y. CPLR § 3017(c), which provides in relevant part as follows:

"[i]n an action for medical or dental malpractice ..., the complaint, counterclaim, cross-claim, interpleader complaint, and third party complaint shall contain a prayer for general relief but shall not state the amount of damages to which the pleader deems himself entitled. If the action is brought in the supreme court, the pleading shall also state whether or not the amount of damages sought exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction."

In contrast to CPLR § 3017(c), Rule 8 of the Federal Rules of Civil Procedure provides as follows:

"**(a) Claims for Relief.** A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends, unless the court already has jurisdiction and the claim needs no new grounds of jurisdiction to support it, (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) *a demand for judgment for the relief the pleader seeks.* Relief in the alternative or of several different types may be demanded." (Fed.R.Civ.P. 8 [Emphasis supplied].)

"In diversity cases, federal procedural rules apply where they 'cover[ ] the point in dispute,' *Hanna v. Plumer*, 380 U.S. 460, 470, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965), at least where no conflicting state rule 'would substantially affect ... primary decisions respecting human conduct,' *id.* at 475, 85 S.Ct. at 1146 (Harlan, J., concurring), and *perhaps* where no such state rule serves important state interests, *Byrd v. Blue Ridge Cooperative, Inc.*, 356 U.S. 525, 536–40, 78 S.Ct. 893, 900–02, 2 L.Ed.2d 953 (1958)." (*Simpson v. Pittsburgh Corning Corp.*, 901 F.2d 277, 283 [2d Cir.1990] [emphasis supplied], *cert. dismissed,* —— U.S. ——, 111 S.Ct. 27, 111 L.Ed.2d 840 [1990]; *see also Morse v. Elmira Country Club*, 752 F.2d 35, 38–39 [2d Cir.1984] [since there is a specific federal rule governing service of process, the federal rule applies in a diversity case, irrespective of whether or not it comports with state law]; *Cargill, Inc. v. Sabine Trading & Shipping Co., Inc.*, 756 F.2d 224, 229 [2d Cir.1985] ["Where there is no contrary federal rule, it is appropriate to apply state procedure in diversity cases"].)

■ In the Court's view, pleading the amount of damages in an *ad damnum* clause in a medical malpractice action brought in the federal court is a procedural matter governed by Fed.R.Civ.P. 8.

The requirements for pleading the amount of damages is procedural (*cf. Stern v. General Electric Co.*, 924 F.2d 472, 476 n. 6 [2d Cir.1991] ["Although the requirement that a shareholder derivative plaintiff allege fraud or bad faith is a matter of state law, the Federal Rules of Civil Procedure govern the degree of particularity with which such an allegation must be made in a federal complaint"] ); the mere contents of the *ad damnum* clause neither affects "primary decisions respecting human conduct" (*Hanna v. Plumer*, 380 U.S. 460, 475, 85 S.Ct. 1136, 1146, 14 L.Ed.2d 8 [1965] [Harlan, J., concurring] ), nor causes forum shopping or the inequitable administration of justice. (*Compare Alisandrelli v. Kenwood*, 724 F.Supp. 235, 242 [S.D.N.Y.1989] [plaintiff moved *in limine* for an order that any judgment he recovers for damages in excess of $250,000 not be "structured" pursuant to N.Y. CPLR Article 50–B; court noted that no Federal Rule of Civil Procedure required the entry of a lump sum (as opposed to a structured) judgment, and held that "[b]ecause failure to apply the state statute would substantially affect the enforcement of a state right, invite forum shopping and the inequitable administration of the law, and undercut the strong state interest in moderating insurance premiums while assuring fair and adequate compensation to injured persons, the state law will be applied"].)

Moreover, while the significance of whether or not a state procedural rule is "outcome determinative" has been "substantially eroded" by the *Hanna v. Plumer* decision—since " '[i]t is difficult to conceive of any rule of procedure that cannot have a significant effect on the outcome of a case' " (*Hansen v. Harris*, 619 F.2d 942, 962 n. 8 [2d Cir.1980] [quoting C. Wright, *Handbook of the Law of Federal Courts* 273 [1976], *reversed on other grounds*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 [1981]; *see also Hanna v. Plumer, supra,* 380 U.S. at 475, 85 S.Ct. at 1146 [Harlan, J., concurring] )—the Court nonetheless finds that the *ad damnum* clause is not "outcome determinative." An important result of CPLR § 3017(c) is the effect it has on the summation of plaintiff's counsel—that is, the permissible scope of plaintiff's counsel's remarks to the jury concerning monetary damages. In this regard, the Court notes that there is a divergence of

view as to the effect of CPLR § 3017(c). (*Compare Braun v. Ahmed*, 127 A.D.2d 418, 515 N.Y.S.2d 473, 478 [2d Dept.1987] ["we conclude that counsel in a medical malpractice action may argue a lump-sum figure based upon the evidence. Counsel is, however, circumscribed by the pleadings and may not argue a figure which cannot be considered reasonable"] *with Garcia v. City of New York*, 569 N.Y.S.2d 27, 28 [1st Dept.1991] ["Here the trial court adopted the more liberal approach of permitting plaintiff to suggest a reasonable figure to the jury, but correctly denied the right to make any reference to the level of damages demanded in the pleadings, in contravention of CPLR 3017(c)"] *and Bagailuk v. Weiss*, 110 A.D.2d 284, 494 N.Y.S.2d 205, 206 [3rd Dept.1985] [it was "highly improper" for plaintiff's counsel to suggest to jury during summation "several large specific sums of money as awards for pain and suffering" and damages for annual lost earnings]). The New York Court of Appeals has yet to resolve this issue. (*See McDougald v. Garber*, 73 N.Y.2d 246, 538 N.Y.S.2d 937, 942 n. *, 536 N.E.2d 372, 377 n. * [1989]).

Similarly, while the Second Circuit recently stated that "perhaps" a state rule serving an important state interest could override a federal rule of procedure, the state interest in enacting CPLR § 3017 would not be emasculated by allowing Fed. R.Civ.P. 8 to govern the pleadings in a diversity action. (*See Bechard v. Eisinger*, 105 A.D.2d 939, 481 N.Y.S.2d 906, 908 [3rd Dept.1984] ["[t]he purpose of this stricture is, in part, to curb the effect of exaggerated demands for damages which could be read to the jury and thereby bias them towards making excessive awards"]; *but see Braun v. Ahmed, supra*, 515 N.Y.S.2d at 479 [CPLR § 3017(c) was intended solely "to reduce publicity concerning exaggerated [*ad damnum*] demands"].)

In *Horn v. The Greenwood Rehabilitation Center, Inc.*, (Allfeds Library) 1984 WL 531 (S.D.N.Y.1984), Judge Haight addressed the effect of CPLR § 3017(c) in a diversity action, and found that CPLR § 3017(c) was a rule of procedure, inapplicable in a federal diversity action. He held as follows:

"Defendant Chu's fourth affirmative defense states '[t]he Complaint violates § 3017(c) of the CPLR.' Section 3017(c) requires that complaints in medical malpractice actions not state the specific amount of damages requested. This complaint does.

This particular provision of the C.P.L.R. is a rule of pleading. Under the familiar doctrine of *Hanna v. Plumer*, 380 U.S. 460 [85 S.Ct. 1136, 14 L.Ed.2d 8] (1965), such a rule, which is procedural in nature rather than substantive, is governed by federal law, not state law, in a diversity suit. Rule 8(a)(3), Fed.R.Civ.P., requires a plaintiff to state in the complaint the relief to which 'he deems himself entitled.' It is this rule, not § 3017(c), which controls pleadings in a federal action. Since whether the ad damnum clause is proper must be determined under federal, not state, law, failure to comply with C.P.L.R. § 3017(c) is not a legally sufficient defense to this lawsuit, and Chu's fourth affirmative defense must be stricken." (pp. 5–6)

(*Accord Boyle v. Revici*, 1987 WL 16365 at pp. 8–9 [Allfeds Library] [S.D.N.Y.1987] [Lowe, J.] ["Rules relating to the presence of ad damnum clauses in medical malpractice cases are procedural in nature.... The procedural directives of CPLR § 3017 are not applicable to the present action. Rather, the Federal Rules of Civil Procedure, which set forth no such requirement with respect to medical malpractice ad damnum clauses are controlling"]; *Symister v. Rossi*, 1986 WL 3792 at p. 5 [Allfeds Library] [S.D.N.Y.1986] [Haight, J.] [following his holding in *Horn, supra*, Judge Haight granted plaintiff's motion to strike an affirmative defense based on a failure to comply with CPLR § 3017].)

If CPLR § 3017(c) affects "primary decisions respecting human conduct" or is at all "outcome determinative," it has such a significant effect during summation, not at the initial stage of pleading a cause of action. The defendants have failed to articulate any specific prejudice they have suffered, or will suffer, by reason of the pres-

ence of a specific amount of damages in the complaint. (*See Horn v. The Greenwood Rehabilitation Center, Inc., supra,* at p. 453 [with respect to $40 million *ad damnum* clause, court stated there is no "risk of prejudice to the jurors. This case has not and is not likely to attract substantial pre-trial publicity, ... [and] [i]n addition, it is my practice not to permit jurors to see the complaint. Therefore, its contents will have no effect on them if they are not publicized before trial"].)

For all of the above reasons, the defendants' motion to strike the *ad damnum* clause in the complaint is denied. The Court reserves decision on the appropriate scope of plaintiffs' counsel's comments to the jury during summation until the time of trial.

## III. THE MOTION TO STRIKE THE THIRD CAUSE OF ACTION

The defendants contend that the third cause of action—Christopher Milano's and Jeanne Milano's claim for loss of services and medical expenses—is untimely.

N.Y. CPLR 214–a provides that a claim of medical malpractice must be brought within 2½ years from the date of the alleged malpractice. (*Hoelzer v. The City of Stamford,* 933 F.2d 1131 [2d Cir.1991] ["since the instant action accrued in New York State ... the district court properly looked to New York law for the governing statute of limitations"]; *Yosef v. The Passamaquoddy Tribe,* 876 F.2d 283, 287 [2d Cir.1989] [diversity action governed by state statute of limitations], *cert. denied,* —— U.S. ——, 110 S.Ct. 1474, 108 L.Ed.2d 611 [1990]; *Morse v. Elmira Country Club, supra,* 752 F.2d at p. 37 ["state statutes of limitations govern state-law claims in federal diversity cases"]) The complaint was served on January 11, 1991. The defendants contend that according to the complaint the alleged malpractice occurred between June 1, 1988 and July 14, 1988, and that "DR. SILVERGLEID's only involvement in the care and treatment of their infant ... was that he performed a CT scan of the infant's brain *on June 1, 1988*" (emphasis in original). Since the

complaint was served 2 years, 7 months and 11 days after the alleged malpractice, the defendants contend that it is untimely.

In response, counsel for the plaintiffs submits an affidavit in which he states that Dr. Rosenthal, the neurosurgeon, examined Michael Christopher Milano and referred him to the defendants for a CAT scan. He then states as follows:

"In the report, written to Dr. Rosenthal, Dr. Silvergleid conveyed his 'impression' that the infant plaintiff had 'craniosynostosis with premature closure of the inferior portions of both coronal sutures.' It is intended to be shown through expert testimony at trial that this 'impression' will lead to a neurosurgical procedure on the skull to open the purported premature closure. Although the report was either written or dictated on June 1, 1988, we do not know when it was received by Dr. Rosenthal or when or how many times Dr. Rosenthal consulted Dr. Silvergleid on the telephone or otherwise with respect to the CAT scan and his report."

Plaintiffs' counsel's affidavit also recounts phone conversations the Milano's had with Dr. Rosenthal on June 7, 20 and 27, and states:

"It is the position of the plaintiffs that the doctrine of constructive participation applies with respect to Dr. Rosenthal's referral and consultation with Dr. Silvergleid, for purposes of statute of limitations, to the extent that the continuous treatment of Dr. Rosenthal is imputed to Dr. Silvergleid and Manhasset Diagnostic Imaging, P.C."

██ "When adjudicating state law claims in federal court, the court applies New York's limitations period, including the state's rules for tolling." (*Reid v. City of New York,* 736 F.Supp. 21, 25 [E.D.N.Y. 1990].) Under New York law, a cause of action for medical malpractice typically "accrues on the date the act, omission or failure to act occurs," except "where there is a continuous treatment related to the original condition or complaint," in which case the statute of limitations is tolled during the course of that treatment. (*DePer-*

*alta v. Presbyterian Hospital*, 121 A.D.2d 346, 503 N.Y.S.2d 788, 790–91 [1st Dept. 1986].) This principle is codified in N.Y. CPLR § 214–a, which provides that the tolling of the statute of limitations extends until the date of the "last treatment." (*See Delaney v. Muscillo*, 138 A.D.2d 258, 525 N.Y.S.2d 221, 223 [1st Dept.1988] [quoting *Borgia v. City of New York*, 12 N.Y.2d 151, 155, 237 N.Y.S.2d 319, 187 N.E.2d 777 [1962]] ["a medical malpractice claim ... will not accrue for statute of limitations purposes until the end of treatment that has 'run continuously' and 'is related to the same original condition or complaint' "].)

■ "The continuing treatment by the physician, however, cannot be imputed to an independent laboratory in the absence of an agency or other relevant relationship between the laboratory and doctor or some relevant continuing relation between the laboratory and the patient." (*McDermott v. Torre*, 56 N.Y.2d 399, 452 N.Y.S.2d 351, 352, 437 N.E.2d 1108 [1982]; *see also Grellet v. City of New York*, 118 A.D.2d 141, 504 N.Y.S.2d 671, 675–76 [2d Dept.1986] [continuous treatment must be based on "an ongoing course of treatment for the same or related illness or injury continuing after the alleged negligent act or omission" and "must, in fact, be ongoing and continuous"].) In addition, the requirements of the continuous treatment doctrine are not satisfied "when there has been mere reliance on a diagnosis, combined with subsequent doctor-initiated contact after an extended period with no physician-patient contact and the absence of objective factors indicating that this period had been expressly contemplated by the parties." (*Rizk v. Cohen*, 73 N.Y.2d 98, 100, 538 N.Y.S.2d 229, 230, 535 N.E.2d 282 [1989].)

While the Court notes that "the policy underlying the continuous treatment doctrine generally will not apply to the independent laboratory" (*McDermott v. Torre*, *supra*, 452 N.Y.S.2d at 355, 437 N.E.2d at 1111; *see also Meath v. Mishrick*, 68 N.Y.2d 992, 510 N.Y.S.2d 560, 561, 503 N.E.2d 115, 116 [1986] ), nevertheless, the Court cannot decide the statute of limitations issue at this stage of the litigation.

(*See Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 152 [2d Cir.1990] ["summary judgment is generally disfavored when the party opposing the motion has not obtained discovery"].)

■ The question of whether or not the defendants engaged in continuous treatment of Michael Christopher Milano beyond June 11, 1998, so that the statute of limitations was tolled, involves questions of fact, inappropriate for determination at this time. (*See H. Sand & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450 [2d Cir.1991] [viewing the evidence in the light most favorable to the plaintiff, Court held that "[t]he district court improperly granted summary judgment on the basis that the action was barred by the statute of limitations since there exists a genuine issue of material fact as to" the date the claim accrued]; *Weinberg v. Gibstein*, 756 F.Supp. 101, 105 [E.D.N.Y.1991] [court found that material issues of fact as to whether or not the defendant doctor engaged in "continuous treatment" of the plaintiff precluded granting summary judgment based on statute of limitations]; *McDermott v. Torre*, *supra*, 452 N.Y.S.2d at 354, 437 N.E.2d at 1110 ["Issues of fact exist on this record as to whether plaintiff's concern about her ankle was one of the purposes for her subsequent visits. Thus, it cannot be determined at this stage that plaintiff's relation with Torre did or did not amount to continuous treatment. The existence of these factual questions precludes [sic] granting summary judgment at this juncture"]; *McKinney v. Bay Ridge Medical Group*, 126 A.D.2d 711, 511 N.Y.S.2d 123, 124 [2d Dept. 1987] ["On this record it is clear that issues of fact exist as to whether one of the purposes of the plaintiff's visits during the period 1978 through 1979 was the alleged continued pain and swelling in her leg"]; *cf. Golden Budha Corp. v. Canadian Land Co. of America, N.V.*, 931 F.2d 196, 201 [2d Cir.1991] ["it simply was improper to dispose of the equitable defenses to the statute of limitation claim when there remained a factual issue as to just how long the critical information had been concealed from the appellant and its assignor"].)

Accordingly, the defendants' motion to dismiss the complaint because it is untimely is denied, without prejudice to renewal at the conclusion of discovery, if appropriate.

\*    \*    \*    \*    \*    \*

Plaintiffs' counsel also contends that while the complaint was served on January 11, 1991, it was filed with the Clerk of the Court on December 13, 1990, and therefore the statute of limitations was tolled 60 days, from December 13, pursuant to § CPLR 203(b)(5). (*See Gold v. Jeep Corp.*, 579 F.Supp. 256 [E.D.N.Y.1984] [Altimari, J.] [a plaintiff obtains the benefit of CPLR 203(b)(5)—which provides that service of the summons on the sheriff timely "commences" an action if service is effected within sixty days after the period of limitations would have expired—in a diversity action by filing the Summons with the Clerk of the Court]; *accord Personis v. Oiler*, 889 F.2d 424, 426 [2d Cir.1989] ["we hold that, as a matter of federal law, section 205(b)(5) may be applied in federal diversity suits"]; *Datskow v. Teledyne, Inc.*, 899 F.2d 1298, 1304 [2d Cir.1990] ["we agree with Judge Altimari that the clerk of a district court may serve as the depository for a summons, whether the relevant county is within or without New York City"], *cert. denied,* —— U.S. ——, 111 S.Ct. 149, 112 L.Ed.2d 116 [1990].)

CPLR 203(b)(5), however, only "affords an extra 60 days beyond the normal limitations period when a summons is delivered to a designated state official *within the normal limitations period* and the summons is served within the 60–day period." (*Datskow v. Teledyne, supra,* 899 F.2d at 1304 [emphasis supplied]) Thus, CPLR § 203(b)(5) is of no avail to the plaintiffs unless the "continuous treatment" doctrine tolled the statute of limitations until at least June 13, 1988, or unless the cause of action accrued on or after June 13, 1988. These issues also involve the determination of questions of fact, and are similarly inappropriate for determination at this time.

SO ORDERED.