■ Amy Amodeo, Appellant, v Angelo Cumella et al., Respondents, et al., Defendant. [838 NYS2d 152]—

In an action to recover damages for medical malpractice, the plaintiff appeals from a judgment of the Supreme Court, Putnam County (O'Rourke, J.), entered February 22, 2006, which, upon a jury verdict, is in favor of the defendants Angelo Cumella and Comprehensive Women's Health, P.C., and against

her dismissing the complaint insofar as asserted against those defendants.

Ordered that the judgment is reversed, on the law, the complaint is reinstated insofar as asserted against the defendants Angelo Cumella and Comprehensive Women's Health, P.C., and a new trial is granted, with costs to abide the event.

This action arises out of the obstetrical care provided during the plaintiff's labor and delivery of her son (hereinafter the infant). The defendant Angelo Cumella, the plaintiff's obstetrician, recognized that the infant's shoulder was not moving past the bony portion of the plaintiff's pelvis, a condition known as shoulder dystocia. Cumella completed a series of obstetrical maneuvers to dislodge the shoulder and deliver the infant.

The plaintiff thereafter commenced this action on behalf of the infant against, inter alia, Cumella and his employer, Comprehensive Women's Health, P.C., (hereinafter collectively the defendants), to recover damages for injuries allegedly sustained by the infant from Cumella's management and handling of the shoulder dystocia. At the trial, upon the defendants' request, the Supreme Court gave an emergency doctrine instruction over the plaintiff's objection. The jury found that the defendants' acts were not a departure from accepted standards of care and returned a verdict in favor of the defendants. We reverse.

"A party is entitled to a charge on the emergency doctrine when, viewing the evidence in the light most favorable to that party, there is a reasonable view of the evidence that his or her conduct was the product of a sudden and unforeseeable occurrence not of his or her own making" (*Cascio v Metz*, 305 AD2d 354, 356 [2003]; *see Caristo v Sanzone*, 96 NY2d 172, 175 [2001]; *Rivera v New York City Tr. Auth.*, 77 NY2d 322, 326-327 [1991]). Here, the defendants were not entitled to such a charge.

Cumella testified at trial that he encountered no difficulties during the delivery until he observed a "turtling" sign, where the infant's head was delivered then retracted, indicating shoulder dystocia. According to Cumella, the shoulder dystocia presented an obstetrical emergency, as there was a limited window of time to deliver the infant before depriving him of oxygen. The nurse assisting Cumella during the delivery also stated that the situation was life-threatening, and both the plaintiff and her husband, who were present in the delivery room, testified that they believed there was an emergency taking place during the delivery. Moreover, obstetrician Nancy Kirshenbaum testified about the importance of recognizing a shoulder dystocia, noting the condition presents an emergency.

However, the evidence at trial established that obstetricians are generally prepared for the occurrence of a shoulder dystocia. Kirshenbaum testified that she had treated about 150 to 200 shoulder dystocias out of the approximately 8,000 babies that she had delivered. She stated that shoulder dystocias and their complications are present in approximately one percent of all deliveries in the United States, and occur with a fair amount of frequency within the normal range of deliveries. A second nurse who assisted Cumella during the delivery of the infant also testified that she had participated in hundreds of deliveries and had attended about 50 deliveries during which a shoulder dystocia had occurred.

Although Cumella testified that he did not anticipate the occurrence of a shoulder dystocia during the course of delivering the infant, he nevertheless prepared for the possibility of a shoulder dystocia in all of his deliveries. In addition, Kirshenbaum testified that the medical training received by obstetricians, with regard to the procedures to be followed when confronted with a shoulder dystocia, is standard and the obstetrician's management of such cases becomes "instinctive."

It is therefore evident from the testimony at trial that Cumella was trained and prepared for the occurrence of a shoulder dystocia, which is not considered an unforeseen occurrence within the field of obstetrics (see Mertsaris v 73rd Corp., 105 AD2d 67, 87 n 3 [1984]; see also Caristo v Sanzone, supra; Hardy v Sicuranza, 133 AD2d 138, 139 [1987]). Consequently, the court should not have given an emergency instruction (see Caristo v Sanzone, supra; Mertsaris v 73rd Corp., supra; see also Muye v Liben, 282 AD2d 661, 662 [2001]; Shaw v Manufacturer's Hanover Trust Co., 95 AD2d 738, 739 [1983]). Under the circumstances, the error was not harmless, and thus, the plaintiff is entitled to a new trial (see Cascio v Metz, supra).

In light of our determination, we need not address the parties' remaining contentions. Spolzino, J.P., Skelos, Dillon and McCarthy, JJ., concur.