Crayton v Sher (2018 NY Slip Op 08461)





Crayton v Sher


2018 NY Slip Op 08461


Decided on December 12, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 12, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JOHN M. LEVENTHAL
SANDRA L. SGROI
ANGELA G. IANNACCI, JJ.


2016-01667
 (Index No. 600123/09)

[*1]Jerlene Crayton, etc., appellant,
v
Gary Sher, et al., respondents.


Goldfarb & Gerzog (Pollack, Pollack, Isaac & DeCicco, LLP, New York, NY [Brian J. Isaac and Kenneth J. Gorman], of counsel), for appellant.
Shaub Ahmuty Citrin & Spratt LLP, Lake Success, NY (Christopher Simone and Gerard S. Roth of counsel), for respondent Gary Sher.
Martin Clearwater & Bell LLP, East Meadow, NY (Barbara D. Goldberg and Rosaleen T. McCrory of counsel), for respondent Winthrop University Hospital.



DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, etc., the plaintiff appeals from a judgment of the Supreme Court, Nassau County (Jerome C. Murphy, J.), dated October 23, 2015. The judgment, upon a jury verdict, and upon an order of the same court dated August 24, 2015, denying the plaintiff's motion, among other things, pursuant to CPLR 4404(a) to set aside the jury verdict, is in favor of the defendants and against the plaintiff dismissing the complaint.
ORDERED that the judgment is reversed, on the law, with one bill of costs, and the matter is remitted to the Supreme Court, Nassau County, for a new trial.
The plaintiff commenced this medical malpractice action against the defendants Gary Sher, Winthrop University Hospital (hereinafter Winthrop), and others, after the plaintiff's decedent, Sally L. Jones, died several days after surgery. The evidence adduced at the jury trial established that on March 22, 2007, Jones, underwent surgery to the cervical region of her spine at Winthrop. On March 27, 2007, due to swelling in her neck, Jones underwent two procedures:(1) a tracheotomy, meaning a hole was cut into her windpipe, and (2) a tracheostomy, where a tube was inserted into her windpipe to enable her to breathe. In the days after the surgery, Jones was improving and was out of bed and talking. On March 30, 2007, a nurse and respiratory therapist were removing a Passy-Muir valve (a device designed to allow a patient to speak with a tracheostomy tube in place) and met resistance while attempting to place an inner cannula into the tube. Jones began to experience shortness of breath. Despite attempts to suction the tube and ventilate Jones manually with an Ambu bag, Jones's oxygen saturation levels continued to drop to the low 60s, and her level of consciousness rapidly decreased. Accordingly, Sher, an anesthesiologist, and Joann Noto, a physician assistant, were paged.
When Sher arrived at Jones's bedside at 10:30 p.m., her oxygen saturation levels had decreased to 45, and she was cyanotic and bradycardic. Although he suspected a possible blockage in the tracheostomy tube, caused by a mucus plug, Sher testified that the tracheostomy was still "fresh," meaning the hole would likely close if the tube was removed, and Sher was therefore reluctant to remove it. Additionally, Jones was wearing a halo brace and was experiencing swelling, which would further complicate replacing the tube. The ear, nose, and throat specialist who performed the tracheotomy advised Sher over the phone to remove the tracheostomy tube. Noto was prepared to replace the blocked tube with a new tube. Instead, Sher attempted conservative measures, and requested assistance from another anesthesiologist, Dr. Kerzner. Sher contemplated inserting a fiberoptic bronchoscope and directed Kerzner to retrieve it from another part of the hospital. When Jones's condition continued to decline, Sher removed the tracheostomy tube and within 30 seconds successfully replaced the new tube. Jones died that same evening.
Upon Sher's request, the Supreme Court charged the jury on the emergency doctrine, over the plaintiff's objection. The jury found that Sher and Winthrop did not deviate from the accepted standard of care in their treatment of Jones. In an order dated August 24, 2015, the Supreme Court denied the plaintiff's motion, inter alia, pursuant to CPLR 4404(a) to set aside the jury verdict. The plaintiff appeals. We reverse.
Initially, the defendants' contention that the appeal from the judgment must be dismissed pursuant to Bray v Cox (38 NY2d 350, 353) because a prior appeal from an order denying the plaintiff's posttrial motion was dismissed by this Court for failure to timely perfect is without merit. By decision and order on motion dated July 27, 2017, this Court vacated the dismissal for failure to timely perfect and permitted the plaintiff to withdraw the appeal from the order. Accordingly, there can be no preclusive effect.
Under the circumstances presented, we disagree with the Supreme Court's determination to instruct the jury on the emergency doctrine. The emergency doctrine "has been reserved, in a medical context, to situations where a doctor is confronted by a sudden and unforeseen condition' and is forced to undertake care under less than optimal circumstances," and is inapplicable where the defendant physician was trained and prepared for the specific emergency (Mertsaris v 73rd Corp., 105 AD2d 67, 87 n 3; see Amodeo v Cumella, 41 AD3d 396, 398). Here, there is no dispute that it was foreseeable for secretions to block a tracheostomy tube and that Sher was qualified as an anesthesiologist to replace a blocked tracheostomy tube. Indeed, Sher admitted that, in his 30 years of experience, creating airways for patients is what anesthesiologists do. Further, Sher was advised by Noto that a mucus plug was blocking the tracheostomy tube which Sher was ultimately able to replace within seconds. Accordingly, there was no sudden and unforeseen condition for which Sher was not trained or prepared.
Therefore, it was error to instruct the jury on the emergency doctrine and the plaintiff is entitled to a new trial.
In light of our determination, we need not address the plaintiff's remaining contentions.
MASTRO, J.P., LEVENTHAL, SGROI and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court